WEST OMAHA INVESTMENTS, A NEBRASKA PARTNERSHIP, APPELLANT, V. SANITARY AND IMPROVEMENT DISTRICT NO. 48 OF SARPY COUNTY, NEBRASKA, APPELLEE.

420 N.W.2d 291

Filed March 11, 1988.   No. 86-532.

John D. Hartigan and Thomas D. Wulff of Kennedy, Holland, DeLacy & Svoboda, for appellant.

Dixon G. Adams, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.
Following the demurrer of Sanitary and Improvement District No. 48 of Sarpy County, Nebraska (S.I.D. No. 48), the district court dismissed plaintiff's fourth amended petition because of failure to state a cause of action and because of the expiration of the statute of limitations.

In its first petition, plaintiff stated that it owned real estate located within the boundaries of Sanitary and Improvement District No. 51 (S.I.D. No. 51). It further alleged that in order to provide adequate water for fire protection, S.I.D. No. 51 contracted with the defendant, also a sanitary and improvement district, whereby the latter was to furnish water for such purposes. On January 15, 1984, a fire occurred in an industrial building owned by the plaintiff in S.I.D. No. 51, and because of the alleged negligent failure of S.I.D. No. 48 to turn on the water service to mains providing water service to S.I.D. No. 51, plaintiff's property was damaged in a substantial amount.

After several procedural skirmishes, plaintiff filed a third amended petition on March 10, 1986, wherein for the first time it was alleged that defendant "may be a political subdivision as defined in the Political Subdivisions Tort Claim Act . . . ." A demurrer to this petition was also sustained, and, on April 15, 1986, plaintiff filed its last amended petition, which finally alleged that a claim had been made against the defendant sanitary and improvement district which was not acted upon and which was withdrawn.

The last amended petition was dismissed, according to the order of the trial court, because "[t]he Court finds that the plaintiff failed to present a <u>claim</u> within the one year time period required by statute and that the petition should be dismissed pursuant to Section 25-221, R.R.S. Neb. 1943, Reissue of 1985."

The record discloses that on January 4, 1985, the plaintiff sent a letter to the clerk of S.I.D. No. 48, containing the following language:

RE: 10802 Frontage Road
I-80
Sarpy County, Nebraska

Dear Mr. Sapp:

I am writing to you because you are shown as the Clerk for Sanitary Improvement District No. 48 in Sarpy County, Nebraska.

Pursuant to §23-2404, R.R.S. (Reissue of 1983) [the Political Subdivisions Tort Claims Act], claim is made

against Sanitary Improvement District No. 48 for the property loss suffered on January 15, 1984 at 10802 Frontage Road, I-80 in Sarpy County, Nebraska, by West Omaha Investments, a partnership. The improvements at this location were destroyed by fire on that date. Preliminary investigation indicates that a contributing cause of the fire loss was the negligent omission on the District's part - in failing to furnish the water with which to extinguish this fire. Please present this claim to the governing body of the political subdivision. If you have any questions, or if additional information would be of assistance to you in your consideration of this claim, please call me.

Yours very truly,

KENNEDY, HOLLAND, DELACY & SVOBODA

[attorneys for plaintiff]

There appears to be no question but that a sanitary and improvement district is a "political subdivision" and that the terms of the Political Subdivisions Tort Claims Act, Neb. Rev. Stat. §§ 23-2401 et seq. (Reissue 1983 & Cum. Supp. 1984), are applicable. *S.I.D. No. 95 v. City of Omaha*, 221 Neb. 272, 376 N.W.2d 767 (1985). As such, a plaintiff is required to file a claim in writing with the clerk of the district which sets forth "the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant." § 23-2404 (Reissue 1983). This claim must be made within 1 year after it accrues. § 23-2416 (Cum. Supp. 1984).

Furthermore, the filing of a notice of claim under the Nebraska Political Subdivisions Tort Claims Act is a condition precedent to the institution of suit against a political subdivision. *Utsumi v. City of Grand Island*, 221 Neb. 783, 381 N.W.2d 102 (1986).

The trial court agreed with the defendant that the letter did not satisfy the requirements of the claim statute in that it did not specify the amount of damages sustained as a result of the fire. For that reason, according to the trial court, a proper claim was never filed.

The defendant, as well as the lower court, relied on *Peterson v. Gering Irr. Dist.*, 219 Neb. 281, 363 N.W.2d 145 (1985). In

*Peterson*, the plaintiffs' "claim" consisted of a document which stated in part:

> "[Y]ou [the irrigation district] have failed to deliver water by reason of negligence or omission of duties and responsibilities of the District and [the plaintiffs] shall hold such district liable for whatever damages *may result* as a result of failure to deliver water as required by the laws of the State of Nebraska." (Emphasis supplied.)

*Id*. at 283-84, 363 N.W.2d at 147. This court found that such document was not a valid claim against the political subdivision because "[t]he document contained no statement as to the amount of damage or loss sustained by the plaintiffs, nor did it allege that such damage or loss had occurred." *Id*. at 284, 363 N.W.2d at 147.

The lower court apparently read this as requiring a plaintiff to specify an exact dollar amount of loss in its claim. However, upon a closer look, it appears that the court in *Peterson* was mostly concerned that the plaintiffs make an actual demand upon the defendant. The court emphasized that the questionable language in the plaintiffs' "claim" was "whatever damages *may result* . . . ." *Id*. Furthermore, the court went on to point out: "Despite plaintiffs' characterization of the document as a 'claim,' it made no demand against the district; rather, it only alerted the district to the *possibility* of a claim." (Emphasis supplied.) *Id*. The court then distinguished a claim from a mere notice of a possible demand by citing from *In re Estate of Feuerhelm*, 215 Neb. 872, 341 N.W.2d 342 (1983). In *Feuerhelm*, the court had compared a notice with a "claim" upon an estate:

> The suggested "claim" demonstrates further deficiency. Although the language of Thompson's individual claim did alert the personal representative to the possibility of a claim by the trust, Thompson's claim did not contain a demand by the trust upon the estate for satisfaction of any obligation. Mere notice to a representative of an estate regarding a possible demand or claim against an estate does not constitute presenting or filing a claim under § 30-2486. If notice were accorded the stature of a claim, the resultant state of flux and uncertainty would frustrate

and avoid the purpose and objectives of the nonclaim statute.

*Feuerhelm, supra* at 875, 341 N.W.2d at 344-45.

The plaintiff in the present case, while not specifying an exact dollar amount, did definitely state that property loss had occurred and that the defendant was responsible. The letter did not merely alert the defendant to the future "possibility of a claim" for "whatever damages may result" as in *Peterson*. Rather, the plaintiff stated that "claim is made" against the defendant for actual property loss caused in part by the defendant's negligence.

Moreover, the act itself does not mandate that the claim contain the amount of damages or loss. The act only specifies that the claim must contain "the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant." § 23-2404. The plaintiff's letter complied with these requirements.

This court recently considered the question of the sufficiency of information set forth in a claim in *Chicago Lumber Co. v. School Dist. No. 71, ante* p. 355, 417 N.W.2d 757 (1988). In that case, the defendant alleged that the letter from the plaintiff's attorney was a defective claim because it did not state "the exact date and the precisely specified location" of the alleged tort. *Ante* p. 366, 417 N.W.2d at 764. This court disagreed:

> [I]t is evident that the notice required by § 23-2404 does not have to state the indicated information, circumstances, or facts with the fullness or precision required in a pleading. . . . The purpose of § 23-2404 is not to require a statement of fact to the extent that the governmental subdivision's absolute liability is verbally demonstrated in the documentary or written claim. Rather, the written claim required by § 23-2404 notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made.

*Ante* p. 368-69, 417 N.W.2d at 765-66.

The court went on to hold that the requirements of the act should be liberally construed so as not to deny relief merely on the basis of technical noncompliance: "Therefore, substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with § 23-2404, when the lack of compliance has caused no prejudice to the political subdivision." *Ante* p. 369, 417 N.W.2d at 766. See, also, *Anderson v. City of Minneapolis*, 138 Minn. 350, 165 N.W. 134 (1917) (a notice of a claim for loss or injury need not be as specific as the complaint in an action to enforce the claim); *Orr v. City of Knoxville*, 346 N.W.2d 507 (Iowa 1984), and *Vermeer v. Sneller*, 190 N.W.2d 389 (Iowa 1971) (substantial compliance with notice of claim statute similar to Nebraska's was sufficient); *Ruth v. City of Omaha*, 82 Neb. 846, 118 N.W. 1084 (1908) (statutory notice requirements should be liberally construed so that those with meritorious claims are not barred by technicalities).

The plaintiff's claim set forth the date, location, and circumstances of the event which gave rise to the claim, and alleged that property loss had occurred as a result of the defendant's negligence.

Although not ruled on by the trial court, the parties argue the effect of the 2-year statute of limitations for filing of a petition as provided by § 23-2416. Because the cause must be remanded for further proceedings, we will attempt to forestall the raising of that issue on retrial.

Section 23-2416 requires the filing of a petition within 2 years of the accrual of the claim (loss by fire), extended for a period of 6 months from the withdrawal of the claim. The claim arose on January 15, 1984. As previously stated, notice of claim was filed on January 4, 1985, within the 1-year period required by § 23-2416. The claim was withdrawn in writing on August 26, 1985. Plaintiff's first petition alleging negligence on the part of the defendant was filed on September 18, 1985, well within the statutory period.

However, it was not until the filing of the fourth amended petition on April 15, 1986, that plaintiff first alleged a

compliance with the claim provision of the Political Subdivisions Tort Claims Act. In *Utsumi v. City of Grand Island*, 221 Neb. 783, 785, 381 N.W.2d 102, 104 (1986), this court stated: "The petition, insofar as it sought relief against the City of Grand Island, failed to allege that Utsumi had complied with the provisions of the Political Subdivisions Tort Claims Act. This was a fatal defect." Accordingly, unless the allegations in the fourth amended petition relate back to the date of filing of the original petition for statute of limitations purposes, the present suit would seem to be time barred.

The plaintiff refers to *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971), for the proposition that "[a] cause of action pleaded by amendment ordinarily relates back to the original pleading for limitation purposes, provided that claimant seeks recovery on the same general set of facts." (Syllabus of the court.) The issue in *Kohler* was whether the cause was "barred by the statute of limitations because an amended petition, filed after the statute had run, presented for the first time the 'strict liability' theory." *Id.* at 430, 191 N.W.2d at 604. The court held that the plaintiff had not stated a new cause of action in the amended pleading, but, rather, had only stated a new theory of recovery, and, therefore, the amendment related back and the cause was not barred by the statute of limitations. The court noted that "[t]he general facts upon which the right to recover was based are the same." *Id.* at 432, 191 N.W.2d at 605.

The defendant agrees with the above rule of law, but claims that it is not dispositive of the issue here involved. The defendant argues that the proper focus is on the requirements set forth in the act itself. Since "no suit shall be maintained against [any] political subdivision . . . except to the extent, and only to the extent, provided by this act" (§ 23-2401 (Reissue 1983)), and the plaintiff's case was filed as a "common law negligence action" only (brief for Appellee at 7), the plaintiff did not file an action permitted by the Political Subdivisions Tort Claims Act, and the plaintiff is barred by the statute of limitations.

In *Utsumi, supra*, the plaintiff's petitions, up to and including his fourth amended petition, did not include any

allegations that he had complied with the act by filing a claim within 1 year. The defendant filed a demurrer, and when the plaintiff failed to plead further, the plaintiff's action was dismissed. This court affirmed, deciding that the failure to allege compliance with the act was a "fatal defect." *Id.* at 785, 381 N.W.2d at 104. The court held that the trial court was correct in sustaining the demurrer, and when the plaintiff "elected not to further plead within the time granted by the court, the district court was correct in dismissing the action . . . ." *Id.* at 786, 381 N.W.2d at 104-05.

The court in *Utsumi* cited *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976), in which the court sustained the defendant's demurrer when the plaintiff's petition failed to allege that he had complied with the act. The *Campbell* decision stated at 712-13, 240 N.W.2d at 344: "The notice of claim requirements of the Nebraska Political Subdivisions Tort Claims Act is a condition precedent to the institution of suit against a political subdivision . . . ." "The failure to allege that the condition precedent had been met was a fatal defect." *Utsumi, supra* at 786, 381 N.W.2d at 104. See, also, *Parriott v. Drainage Dist. No. 6*, 226 Neb. 123, 410 N.W.2d 97 (1987), wherein this court found that a drainage district is a political subdivision within the meaning of the act "and, therefore, compliance with §§ 23-2401 et seq. is a condition precedent to the institution of a tort action against a drainage district. The failure to allege that the condition had been met is a fatal defect to such a suit." 226 Neb. at 125, 410 N.W.2d at 99-100.

Of course, the present case may be distinguished from *Utsumi* and *Campbell* because in *Utsumi* and *Campbell* the plaintiffs apparently did not attempt to remedy their mistakes; the opinion in *Utsumi* specifically noted that the plaintiff elected not to amend his petition within the time granted by the lower court. The court in *Utsumi* had no need to determine what the result would have been had Utsumi attempted to conform his petition to allege compliance with the act.

The plaintiff is correct in stating that the general rule in Nebraska is that an amended pleading in the same cause of action ordinarily relates back to the original pleading for statute of limitations purposes. This has long been the rule. As early as

1899, the Nebraska court held that where an amendment to a petition, declaration, or complaint sets up no new matter or claim, but merely amplifies and restates with more certainty or in a different form the cause of action set out in the original pleading, it relates back to the commencement of the suit, and the statute of limitations is arrested at that point. *Norfolk Beet-Sugar Co. v. Hight*, 59 Neb. 100, 80 N.W. 276 (1899); *Bush v. Tecumseh Nat. Bank*, 64 Neb. 451, 90 N.W. 236 (1902); *Chicago, R. I. & P. R. Co. v. Young*, 67 Neb. 568, 93 N.W. 922 (1903). In *Kennedy v. Potts*, 128 Neb. 213, 258 N.W. 471 (1935), the court ruled that where an original action was timely instituted, an amended petition, which was filed after the running of the statute of limitations and which was merely declaring on the same cause of action, was not barred by limitations. And in *Witt v. Old Line Bankers Life Ins. Co.*, 92 Neb. 763, 139 N.W. 639 (1913), the court affirmed that where an original petition merely stated a cause of action defectively, a restatement of the cause of action in proper form did not amount to a statement of a new or different cause of action.

This court has recently reaffirmed the general rule: " '[A] cause of action pleaded by amendment ordinarily relates back to the original pleading provided that claimant seeks recovery on the same general set of facts.' " *Forker Solar, Inc. v. Knoblauch*, 224 Neb. 143, 148, 396 N.W.2d 273, 277 (1986), citing *Abbott v. Abbott*, 185 Neb. 177, 174 N.W.2d 335 (1970). See, also, *Knoell Constr. Co., Inc. v. Hanson*, 210 Neb. 628, 316 N.W.2d 321 (1982). "Alternative theories of recovery on the same general set of facts are not ordinarily separate causes of action for the purposes of the running of a statute of limitations." *Knoell, supra* at 629, 316 N.W.2d at 322. "[I]f the general facts upon which the right to recover is based are the same, the amendment relates back." *Forker Solar, supra* at 148, 396 N.W.2d at 277, citing *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971).

The federal "relation-back" statute is nearly identical to the general rule stated in Nebraska case law. Fed. R. Civ. P. 15(c) states in part: "(c) Relation Back of Amendments. Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or

attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

Furthermore, federal case law on the subject of the relation back of amended petitions is analogous to Nebraska case law in that area. Thus, a look at federal cases decided under rule 15(c) and the corresponding general rules of law may provide guidance.

In *United States v. Johnson*, 288 F.2d 40 (5th Cir. 1961), the plaintiffs complained that they suffered damages as a result of Air Force planes flying too close to their home, the planes crashing "within plain view" of their home, and the failure of the U.S. Government to compensate them for being forced to move. This tort claim fell within the Federal Tort Claims Act, which, like the act in the present case, required the plaintiffs to commence an action within 2 years after the tort occurred. The plaintiffs' original complaint was filed well within the 2-year period, but did not allege negligence on the part of the United States. Not until the second amended petition, which was filed after the 2-year period had run, did the plaintiffs allege negligence of the United States, thus bringing the claim within the province of the Federal Tort Claims Act.

The court noted: "The question, then, is whether the second amendment relates back to the filing of the original complaint." 288 F.2d at 42. The court cited a previous decision in which it held: " 'Limitation is suspended by the filing of a suit because the suit warns the defendant to collect and preserve his evidence in reference to it. . . .' " *Id.* The court noted rule 15(c), and agreed with Professor Moore's explanation of the general rule:

> "If the original pleading gives fair notice of the general fact situation out of which the claim or defense arises, an amendment which merely makes more specific what has already been alleged generally, or which changes the legal theory of the action, will relate back even though the statute of limitations has run in the interim."

288 F.2d at 42, citing 3 J. Moore, Moore's Federal Practice 852 (2d ed. 1948). The court concluded:

> Though there was a complete change in the legal theory of plaintiffs' complaint, their claim continued to arise out of the conduct, transaction or occurrence attempted to be

set forth in the original complaint. We hold, therefore, that the second amendment relates back to the date of the original complaint, and that the action was not barred by the two-year limitation in the Federal Tort Claims Act.

288 F.2d at 42.

*Wirtz v. W. G. Lockhart Construction Co.*, 230 F. Supp. 823 (N.D. Ohio 1964), was also decided under rule 15(c). The court decreed: "So long as the original complaint notices the defendant that a claim is lodged against him, amendment will be freely granted to help in particularizing the claim, so long as the purported amendment does not in fact serve as a subterfuge for including a *separate* claim which would otherwise be barred at the time of amendment." (Emphasis in original.) 230 F. Supp. at 830.

The plaintiff in *Drakatos v. R. B. Denison, Inc.*, 493 F. Supp. 942 (D. Conn. 1980), sought to file a second amended petition to allege jurisdiction under the "Death on High Seas by Wrongful Act" statute, although, if filed on that date as an original complaint, the claim would have been barred by the statute's 2-year time limitations. The court observed that the language of the original and amended claims was virtually identical, the only distinction being that the amended claim was grounded in the statute, while the original claim was based on common law.

The court found rule 15(c) controlling, and determined that "amendment under Rule 15(c) is freely granted to cure a defective statement of jurisdiction or to replace an inadequate legal theory." 493 F. Supp. at 945. The court further explained rule 15(c)'s function:

Rule 15(c) is based on a theory of constructive notice. So long as the amendment arises from the core circumstances asserted in the original complaint, the defendant is considered to have had fair notice of the amendment since the filing of the complaint. For the purposes of a statute of limitations, therefore, the original filing date becomes the only relevant event.

493 F. Supp. at 946-47 n.6. Despite the defendant's assertion that the running of the act's 2-year limitations period served not merely to time-bar but to actually extinguish the plaintiff's

cause of action, the court allowed the plaintiff to amend her claim to allege jurisdiction under the act.

Finally, in *Beeler v. United States*, 338 F.2d 687 (3d Cir. 1964), the plaintiffs' cause of action fell within the Suits in Admiralty Act, although they originally filed their claim under the Federal Tort Claims Act. They sought to amend the complaint by substituting the Suits in Admiralty Act for the Federal Tort Claims Act after the 2-year limitation of the Suits in Admiralty Act had expired. The court allowed the amendment, noting especially that "the allowance of the amendment cannot adversely affect the defendant while refusal to allow it might put an end to the plaintiffs' right to pursue their cause of action." *Id.* at 690. The court seemed to focus on the fairness of allowing the amendment:

> To hold that, having set forth facts which if proved would entitle him to recover, a plaintiff in a case like the present one loses, beyond hope of redemption, the right to pursue his action because he has cited the wrong statute as the basis for it would be indeed a sterile technicality.

*Id.* at 689. See, also, *Bay State Crabmeat Co. v. United States*, 78 F. Supp. 131 (D. Mass. 1948), in which the court allowed the plaintiff to amend its complaint in admiralty to refer instead to the Federal Tort Claims Act, even though the Federal Tort Claims Act's statute of limitations had run.

Although the Nebraska court has not yet had the opportunity to directly decide whether the general "relation back" principles apply to claims brought under the state's Political Subdivisions Tort Claims Act, an analysis of federal case law, Nebraska case law, general policy considerations, and the act itself leads to the conclusion that an amended pleading under the act should relate back to the date of the original petition as well.

Based on the reasoning of the foregoing cited cases, we hold that an amended pleading which relies upon the same set of facts as the original pleading, but simply alters the legal theory upon which recovery is sought, will relate back even though the statute of limitations has run in the interim. In this case, the plaintiff relied upon the same incident and the same set of facts, i.e., the negligent failure to furnish water, which caused

plaintiff loss by reason of fire.

The main purpose of the statute of limitations is to notify the defendant of a complaint against it within a reasonable amount of time so that the defendant is not prejudiced by having an action filed against it long after the time it could have prepared a defense against the claim. This purpose was satisfied in the present case.

The defendant was aware of the claim against it when it received plaintiff's letter of January 4, 1985. From the substance of the original petition, the defendant was aware that the plaintiff's petition was referring to the circumstances which gave rise to the plaintiff's letter of January 4. The substance of the plaintiff's claim has not changed from the notice of claim sent on January 4, 1985, to the final amended petition filed April 15, 1986. By amending to allege compliance with the act, the plaintiff has not introduced anything new to the defendant. The plaintiff's fourth amended petition does relate back to its original filing for statute of limitations purposes.

The judgment of the district court is reversed, and the cause is remanded for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.