16 Neb. App. 288
SANTOS A. VILLANUEVA, APPELLANT,
v.
CITY OF SOUTH SIOUX CITY, A POLITICAL SUBDIVISION, APPELLEE.
No. A-06-321.
Court of Appeals of Nebraska.
Filed January 8, 2008.
Steven H. Howard, of Dowd, Howard & Corrigan, L.L.C., for appellant.
Thomas J. Culhane, of Erickson & Sederstrom, P.C., for appellee.
INBODY, Chief Judge, and CARLSON and CASSEL, Judges.
CARLSON, Judge.

INTRODUCTION
Santos A. Villanueva brought a negligence action against the City of South Sioux City (the City) following an automobile accident with an employee of the City. The district court for Dakota County sustained the City's motion for summary judgment and overruled Villanueva's motion for partial summary judgment. Villanueva appeals. At issue in this case is whether Villanueva complied with the notice requirements of the Political Subdivisions Tort Claims Act (Tort Claims Act), Neb. Rev. Stat. §§ 13-901 to 13-926 (Reissue 1997 & Cum. Supp. 2002).

BACKGROUND
On September 26, 2003, Villanueva filed an amended complaint against the City, alleging that he was injured on February 25, 2002, as a result of an automobile accident with Paul Black, an employee of the City. The amended complaint alleged that the accident was caused by Black's negligence and that at the time of the accident Black was operating a vehicle owned by the City and was acting in the course and scope of his employment with the City. Villanueva claimed that as a result of the injuries he sustained in the accident, he has incurred medical expenses in excess of $100,000 and has and will continue to suffer physical pain, mental suffering, loss of enjoyment of life, loss of income, scarring, and disfigurement. Villanueva also alleged that he timely filed a claim with the City pursuant to the Tort Claims Act and that he has fully complied with the Tort Claims Act.
On October 20, 2003, Villanueva filed a motion for partial summary judgment, and on November 3, the City filed a motion for summary judgment. Both motions were made in regard to the same issuewhether Villanueva complied with the notice requirements of the Tort Claims Act. On June 4, 2004, the trial court found that Villanueva had complied with the notice requirements of the Tort Claims Act and sustained Villanueva's motion for partial summary judgment and overruled the City's motion for summary judgment.
On December 27, 2005, the City filed a motion asking the trial court to reconsider its ruling on Villanueva's motion for partial summary judgment and the City's motion for summary judgment. On February 14, 2006, a hearing was held on the motion to reconsider. The evidence at the hearing on the motion to reconsider included a letter from Villanueva's attorney dated April 15, 2002, addressed to the city clerk, city attorney, and city administrator. The letter stated as follows:
Please be advised that we represent ... Villanueva who received serious personal injuries on February 25, 2002.... Villanueva was traveling north bound on 3' Avenue at its intersection with W. 7th Street, when a pickup truck owned by the City ... and driven by ... Black, entered the intersection and struck the driver's side of ... Villanueva.... Villanueva has suffered personal injury as a result of this collision. Our investigation of the accident reveals that the personal injury suffered by ... Villanueva was solely and proximately caused by the negligence of the City.
This letter shall serve as our notice to you under the Political Subdivision[s] Tort Claims Act, Neb. Rev. Stat. Sec. 13-902 et. seq. for the personal injuries sustained by... Villanueva as a result of said occurrence. Would you kindly request the attorney responsible for the handling of this claim to contact me.
The evidence also included a January 7, 2003, letter from Villanueva's new counsel to the City's city clerk, city attorney, and city administrator which advised that he had been retained to represent Villanueva in his "injury auto accident" with a vehicle owned by the City and that it was Villanueva's position that the City was at fault. The January 7 letter also referenced the April 15, 2002, letter, included a copy of such letter, and asked whether "a decision on this claim" had been made.
On February 22, 2006, the trial court entered an order finding that the two letters, taken together or separately, did not satisfy the requirements of § 13-905. The trial court sustained the City's motion for summary judgment, overruled Villanueva's motion for partial summary judgment, and dismissed Villanueva's amended complaint. Villanueva appeals.

ASSIGNMENTS OF ERROR
Villanueva assigns that the trial court erred in (1) sustaining the City's motion for summary judgment and (2) overruling Villanueva's motion for partial summary judgment.

STANDARD OF REVIEW
[1,2] Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Alston v. Hormel Foods Corp., 273 Neb. 422, 730 N.W.2d 376 (2007); City of Lincoln v. Hershberger, 272 Neb. 839, 725 N.W.2d 787 (2007). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS
[3] Villanueva assigns that the trial court erred in granting summary judgment in favor of the City on the ground that he failed to comply with the notice requirements of the Tort Claims Act, specifically § 13-905. The Tort Claims Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees. Jessen v. Malhotra, 266 Neb. 393, 665 N.W.2d 586 (2003); Keller v. Tavarone, 265 Neb. 236, 655 N.W.2d 899 (2003). In the instant case, it is undisputed that the City is a political subdivision subject to the Tort Claims Act.
[4] While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Tort Claims Act. Jessen v. Malhotra, supra; Keller v. Tavarone, supra. Section 13-920(1) provides, in relevant part:
No suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment ... unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued ....
(Emphasis supplied.)
Villanueva's claim for negligence accrued on February 25, 2002. Under § 13-920(1), Villanueva was required to submit a written claim to the appropriate political subdivision by February 25, 2003. He argues that his April 15, 2002, letter and his January 7, 2003, letter were such a claim.
[5] The written claim required by the Tort Claims Act notifies a political subdivision concerning possible liability for its relatively recent act or omission, provides an opportunity for the political subdivision to investigate and obtain information about its allegedly tortious conduct, and enables the political subdivision to decide whether to pay the claimant's demand or defend the litigation predicated on the claim made. Jessen v. Malhotra, supra.
[6,7] The necessary content of a written claim is addressed in § 13-905, which requires that all claims shall be addressed "in writing and shall set forth the time and place of the occurrence giving rise to the claim and such other facts pertinent to the claim as are known to the claimant." The notice requirements for a claim filed pursuant to the Tort Claims Act are liberally construed so that one with a meritorious claim may not be denied relief as the result of some technical noncompliance with the formal prescriptions of the act. Chicago Lumber Co. v. School Dist. No. 71, 227 Neb. 355, 417 N.W.2d 757 (1988). Therefore, substantial compliance with the statutory provisions pertaining to a claim's content supplies the requisite and sufficient notice to a political subdivision in accordance with § 13-905, formerly Neb. Rev. Stat. § 23-2404 (Reissue 1983), when the lack of compliance has caused no prejudice to the political subdivision. Chicago Lumber Co. v. School Dist. No. 71, supra.
In concluding that the content of Villanueva's two letters, taken together or separately, were insufficient to satisfy the notice requirements of § 13-905, the trial court specifically found that the letters do not make a proper demand of the relief sought to be recovered. The trial court relied on Jessen v. Malhotra, 266 Neb. 393, 665 N.W.2d 586 (2003), in making this finding. In Jessen, a physician employed by a county medical clinic allegedly misdiagnosed a patient's heart disease. Two days after seeing the physician, the patient died from a myocardial infarction. The patient's widow sent a letter to the physician stating that her husband had been examined by the physician and implying that the physician negligently failed to diagnose her husband's condition, a condition which led to his death. The letter further stated that the physician's misdiagnosis was "'malpractice" and that the patient's family was "'very angry." Id. at 395, 665 N.W.2d at 589. The Nebraska Supreme Court concluded that the content of the widow's letter was insufficient to satisfy the requirements of a written claim under § 13-905 because it did not make a demand for the satisfaction of any obligation, nor did it convey what relief was sought by the plaintiff. The court found that without a proper demand of the relief sought to be recovered, a written claim fails to accomplish one of its recognized objectives: to allow the political subdivision to decide whether to settle the claimant's demand or defend itself in the course of litigation.
The Jessen court cited two other cases with approval in which the Nebraska Supreme Court had construed the predecessor to § 13-905 to require that a written claim make a demand upon a political subdivision for the satisfaction of an obligation. The court first referenced Peterson v. Gering hr. Dist., 219 Neb. 281, 363 N.W.2d 145 (1985), a case in which the claim failed to meet the "demand" requirement. The purported claim in Peterson notified the political subdivision that it "`failed to deliver water by reason of negligence or omission of duties and responsibilities of the [political subdivision]"' and that the plaintiffs would hold it liable for "`whatever damages may result as a result of failure to deliver water." Id. at 283-84, 363 N.W.2d at 147 (emphasis in original). The Peterson court noted that the purported claim did not state the amount of damage or loss sustained by the plaintiffs, nor did it allege that such damage or loss had occurred. The court found that the purported claim did not meet the Tort Claims Act's requirements because "it made no demand against the [political subdivision]; rather, it only alerted the district to the possibility of a claim." Peterson v. Gering hr. Dist., 219 Neb. at 284, 363 N.W.2d at 147.
The court in Jessen v. Malhotra, supra, also cited with approval West Omaha Inv. v. S.I.D. No. 48, 227 Neb. 785, 420 N.W.2d 291 (1988), as a case in which the claim "passed statutory muster." In West Omaha Inv., the plaintiff sent a letter to a political subdivision stating that pursuant to the Tort Claims Act "`claim is made against [the political subdivision] for the property loss suffered" by plaintiff as a result of a fire. The letter alleged that the fire loss was caused in part by the political subdivision's negligencespecifically in its failing to furnish the water with which to extinguish the fire. 227 Neb. at 787-88, 420 N.W.2d at 294. In considering whether the letter met the Tort Claims Act's requirements, the West Omaha Inv. court determined that the court in Peterson v. Gering hr. Dist., supra, was mostly concerned that the plaintiffs make an actual demand upon the defendant. It noted that the Peterson court emphasized that the questionable language in the plaintiff's claim was "'whatever damages may result." 227 Neb. at 789, 420 N.W.2d at 294. The Supreme Court found that the letter in West Omaha Inv. stated that property loss had occurred and that the defendant was responsible and thus, that the letter satisfied the Tort Claims Act's requirements. The West Omaha Inv. court stated, "The letter did not merely alert the defendant to the future `possibility of a claim' for `whatever damages may result' as in Peterson. Rather, the plaintiff stated that `claim is made' against the defendant for actual property loss caused in part by the defendant's negligence." 227 Neb. at 790, 429 N.W.2d at 295.
In determining whether the two letters in the present case satisfy the requirements of § 13-905, we also look to Keating v. Wiese, 1 Neb. App. 865, 510 N.W.2d 433 (1993). In Keating, the plaintiff's attorney sent a letter to a political subdivision notifying it that the attorney was representing the plaintiff in connection with damages sustained when a city bus struck the plaintiff's car. The letter further stated: "We are not making a formal claim at this time, simply because it is impossible to determine the extent of [the plaintiff's] damages." Keating, 1 Neb. App. at 867, 510 N.W.2d at 436. The letter also requested a response by the political subdivision's insurance claims adjuster. This court took Peterson v. Gering Irr. Dist., supra, and West Omaha Inv. v. S.LD. No. 48, supra, into account in determining whether the plaintiff's letter in Keating met the requirements of § 13-905. We concluded that the plaintiff's letter in Keating notified the political subdivision that the plaintiff had sustained damages as a result of a collision with a city bus and held that the letter substantially complied with the requirements of the Tort Claims Act. We stated that the political subdivision knew of its possible liability for the recent accident and that the political subdivision was given the opportunity to investigate and obtain information about the accident. We further stated that the political subdivision had the opportunity to decide whether to pay the plaintiff's demand or to defend the litigation predicated on the claim.
Having considered the previously discussed case law, we determine that the instant case is comparable to West Omaha Inv. v. S.LD. No. 48, 227 Neb. 785, 420 N.W.2d 291 (1988), and Keating v. Wiese, supra. In both of these cases, the claims satisfied the requirements of § 13-905 because they stated that the plaintiffs had sustained damages as a result of a negligent act by the respective political subdivision. In contrast, the purported claims in Jessen v. Malhotra, 266 Neb. 393, 665 N.W.2d 586 (2003), and Peterson v. Gering In: Dist., 219 Neb. 281, 363 N.W.2d 145 (1985), did not allege that any damage or loss had occurred. In the present case, the April 15, 2002, letter states that Villanueva suffered personal injuries as a result of the City's negligence. The letter also sets forth the date, location, and circumstances of the event which gave rise to the claim. It further states that the letter serves as notice to the City under the Tort Claims Act and asks that the attorney responsible for handling the "claim" contact Villanueva's attorney. Thus, we conclude that the content of the April 15, 2002, letter alone substantially complies with the requirements of § 13-905. As we concluded in Keating v. Wiese, supra, the letter made the City aware of its possible liability for the recent accident, and the City was given the opportunity to investigate and obtain information about the accident. The City had the opportunity to decide whether to pay Villanueva's demand or to defend the litigation predicated on the claim. No assertion is made that the City was in any way prejudiced by the claimed omissions.
We note that given the foregoing analysis, the question of whether a proper claim has been made under the Tort Claims Act is a recurring one. Clearly more care in drafting such claims would eliminate the necessity of litigating the issue.

CONCLUSION
We conclude that Villanueva's April 15, 2002, letter substantially complies with the notice requirements of the Tort Claims Act and, therefore, that the trial court erred in granting summary judgment in favor of the City and in overruling Villanueva's motion for partial summary judgment. We reverse the judgment of the trial court sustaining the City's motion for summary judgment and remand the cause to the trial court with direction to sustain Villanueva's motion for partial summary judgment.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.