766 N.W.2d 408 (2009)
17 Neb. App. 419
John R. LOWE, appellant and cross-appellee,
v.
LANCASTER COUNTY SCHOOL DISTRICT 0001, also known as Lincoln Public Schools, and Michael Kaczmarczyk, appellees and cross-appellants.
No. A-08-363.
Court of Appeals of Nebraska.
March 10, 2009.
*411 Vincent M. Powers, of Vincent M. Powers & Associates, Lincoln, for appellant.
John M. Guthery and Derek A. Aldridge, of Perry, Guthery, Haase & Gessford, P.C., L.L.O., Lincoln, for appellees.
INBODY, Chief Judge, and SIEVERS and MOORE, Judges.
INBODY, Chief Judge.

INTRODUCTION
John R. Lowe appeals the dismissal of his tort action against Lancaster County School District 0001, also known as Lincoln Public Schools (LPS), and LPS employee Michael Kaczmarczyk, based on the district court's finding that Lowe failed to comply with the filing requirements of the Political Subdivisions Tort Claims Act (Tort Claims Act) and the court's determination that the doctrine of equitable estoppel was not applicable in this case. For the reasons set forth herein, we affirm in part, and in part reverse and remand for further proceedings.

STATEMENT OF FACTS
Lowe filed a negligence action against LPS and Kaczmarczyk, alleging that Lowe was injured on or about March 10, 2005, when the motor vehicle that Lowe was driving was rearended by a vehicle owned by LPS and negligently driven by Kaczmarczyk. *412 LPS and Kaczmarczyk filed answers denying any act of negligence and further asserting, inter alia, the affirmative defenses that Lowe failed to comply with the notice requirement of Neb. Rev.Stat. § 13-905 (Reissue 2007) of the Tort Claims Act and that Lowe's claims were barred by the applicable statute of limitations.
LPS and Kaczmarczyk moved for summary judgment, and a hearing thereon was held. The facts adduced, when viewed in the light most favorable to Lowe, established the following: After the accident, Lowe hired an attorney to represent him in the personal injury action against LPS and Kaczmarczyk. According to the attorney's deposition testimony contained in exhibit 14, the attorney telephoned the LPS district office, identified himself as an attorney, and asked the person who answered the telephone where to file a political subdivisions tort claim. The person who answered LPS' telephone told the attorney to file the claim with the human resources department and gave him a specific post office box address for that department. During the attorney's deposition, he testified that he made notes contemporaneously with that telephone call, which notes were marked as deposition exhibit 7. The notes stated "Nancy" and "HR Lincoln Public Schools PO Box 82889 Lincoln 68501." Although the attorney could not recall whether "Nancy" was the person whom he talked to or a person who worked for human resources whom he was directed to contact, the attorney testified that he was directed to file his claim with the human resources department at the address which he had been provided and which he wrote down contemporaneously with the telephone call. Each of the women named "Nancy" who worked in the human resources department during the time period in question was deposed and denied speaking with the attorney.
In the attorney's deposition, when asked if the person who answered the telephone was a man or a woman, the attorney responded, "To the best of my recollection, I believe it was a woman.... But Ilike I said, I can't recall." The attorney did not believe that he asked who the secretary of the governing body was or whose duty it was to maintain the official records of the political subdivision or the governing body. He further testified that he was not claiming this person intentionally gave him the wrong information and that "they seemed to be acting in good faith ... when they relayed the information to me, and so I assumed that they were." On September 13, 2005, the attorney mailed a claim to LPS' human resources department at the post office box address which had been provided to him.
When the attorney did not receive an acknowledgement of LPS' receipt of the claim, as requested in the claim letter, the attorney telephoned LPS' district office, identified himself as an attorney who had been told to file a tort claim with the human resources department, and said that he had not received a response on the previously filed claim. The attorney was told that he should speak with "Sue Wright." However, in his deposition testimony, the attorney was not entirely certain whether the second telephone call occurred prior to, or after, his hand delivery of the amended claim. The attorney did not remember whom he talked to during that second call, and he stated, "[C]ould I swear on a stack of bibles? No. But to the best of my recollection that's how that's how it would have happened." The attorney stated that the telephone call was his primary reliance.
The attorney subsequently decided to amend the claim and drafted an amended claim dated October 26, 2005. The amended *413 claim was not addressed to Wright personally; it was addressed "Dear Sir or Madam." Since there had been no acknowledgment of the initial claim, the attorney hand-delivered the amended claim to the district office on October 31. He then went to the front desk, indicated that he was an attorney who had previously filed a political tort claim with the human resources/risk management department, and asked with whom he should follow up. (Risk management is a department within the human resources division of LPS.) The receptionist identified the appropriate individual as Sue Wright. The attorney proceeded to Wright's office, but was informed that Wright was not in; however, he was able to speak to claims handler Kim Miller, who told him that Wright was "the one that handles" the tort claims. Miller was asked to date stamp a copy of the amended claim for the attorney, which she did. The attorney testified that after speaking with Miller, he left feeling reassured that his claim had been filed with the right person. Wright, the risk manager for LPS in 2005 and 2006, responded to the attorney by letter dated November 1, 2005, wherein she "acknowledges receipt by the Human Resources Department of your September 13, 2005 and October 26, 2005 letters on the above referenced claim." At her deposition, Wright acknowledged that, at the time she mailed the aforementioned letter, she knew that the superintendent, not the human resources department, was designated to accept tort claims on behalf of LPS. Wright further knew that Lowe's claim had not been delivered to the superintendent, because she had made an inquiry with the superintendent's assistant. Further, when asked in her deposition whether Wright had received input from, or had a conversation with, an LPS attorney prior to drafting the letter, Wright stated, "Possibly," and "I could have been advised. I do not remember."
In Wright's deposition, she testified that when a tort claim is delivered to the superintendent, the claim is forwarded to her. Wright then sends a copy of the claim to legal counsel and LPS' insurance company and opens a file under the claimant's name. In Lowe's case, Wright followed the same process as she did with claims forwarded to her by the superintendent. Wright stated that if, hypothetically, she had known the attorney had been informed by someone from LPS that the human resources department, or Wright herself, was the appropriate place to file a tort claim, Wright would have advised the attorney that neither was the proper place.
LPS is a Class IV public school district as classified under the statutes of the State of Nebraska and is a political subdivision for the purposes of the Tort Claims Act. LPS regulation No. 3500.5 of the LPS Policies and Regulations states, in part, that "[t]ort claims will be received and placed on file with the secretary of the board ...." LPS policy No. 2110 states, in part, that "the superintendent serves as executive secretary of the board of education." Dr. E. Susan Gourley was the superintendent of LPS in 2005 and 2006 and served as the executive secretary of the Lincoln Board of Education. The terms "secretary of the board" and "executive secretary of the board" are the same position with LPS.
The district court granted LPS and Kaczmarczyk's motion for summary judgment, based upon its determination that there were no material facts in dispute regarding Lowe's failure to serve his tort claim upon the appropriate individual under the Tort Claims Act. Further, the district court found that the doctrine of equitable estoppel did not excuse Lowe's failure to comply with the act, because the evidence *414 did not support a finding of false representation or concealment of material facts. The district court determined that, because the statute of limitations, had run, LPS and Kaczmarczyk were entitled to judgment as a matter of law. Lowe has timely appealed to this court.

ASSIGNMENTS OF ERROR
Lowe contends that the district court erred in finding that he did not comply with the Tort Claims Act and in failing to apply the doctrine of equitable estoppel to preclude LPS and Kaczmarczyk from raising the affirmative defense that Lowe did not comply with the filing requirements of the Tort Claims Act. LPS and Kaczmarczyk have cross-appealed, claiming that the district court erred in receiving exhibit 14, the attorney's deposition, into evidence over hearsay and foundation objections.

STANDARD OF REVIEW
Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue as to any material fact or as to the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. Chebatoris v. Moyer, 276 Neb. 733, 757 N.W.2d 212 (2008). In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id. When reviewing questions of law, an appellate court resolves the questions of law independently of the trial court's conclusions. Id.

ANALYSIS

Compliance With Tort Claims Act.
Lowe contends that the district court erred in finding that he failed to comply with the filing requirements of § 13-905 of the Tort Claims Act. The Tort Claims Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees. Jessen v. Malhotra, 266 Neb. 393, 665 N.W.2d 586 (2003); Keller v. Tavarone, 265 Neb. 236, 655 N.W.2d 899 (2003); Villanueva v. City of South Sioux City, 16 Neb.App. 288, 743 N.W.2d 771 (2008). See, Neb.Rev.Stat. § 13-919 (Reissue 2007) (claims against political subdivision; limitation of action); Neb. Rev.Stat. § 13-920 (Reissue 2007) (suit against employee of political subdivision for act occurring after May 13, 1987; limitation of action). It is undisputed that LPS is a political subdivision for the purposes of the Tort Claims Act.
All tort claims under the Tort Claims Act "shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision." § 13-905. The filing requirement of § 13-905 constitutes a "procedural precedent" to the commencement of a judicial action. See, id.; Niemoller v. City of Papillion, 276 Neb. 40, 752 N.W.2d 132 (2008); Crown Products Co. v. City of Ralston, 253 Neb. 1, 567 N.W.2d 294 (1997). The Nebraska Supreme Court has applied a substantial compliance analysis when there is a question about whether the content of the required claim meets the requirements of the statute; however, the court has expressly held that if the notice is not filed with the person designated by statute as the authorized recipient, a substantial compliance analysis is not applicable. Niemoller v. City of Papillion, supra.
*415 In the instant case, the evidence is undisputed that Lowe did not file his claim with Gourley, who was the superintendent of LPS and secretary of the board of education and, as such, was the person designated by LPS as the authorized recipient to receive tort claims under the Tort Claims Act. The aforementioned case law is clear that a substantial compliance analysis is inapplicable to situations in which the political subdivision contends that the claim was not filed with the recipient designated by § 13-905. Because Lowe did not file his claim with the person designated by LPS to receive tort claims, he did not comply with the filing requirements of § 13-905.

Equitable Estoppel.
Next, Lowe contends that the district court erred in failing to apply the doctrine of equitable estoppel to preclude LPS and Kaczmarczyk from raising the affirmative defense that Lowe did not comply with the filing requirements of the Tort Claims Act.
Six elements must be satisfied for the doctrine of equitable estoppel to apply: (1) conduct which amounts to a false representation or concealment of material facts or, at least, which is calculated to convey the impression that the facts are otherwise than, and inconsistent with, those which the party subsequently attempts to assert; (2) the intention, or at least the expectation, that such conduct will be acted upon by, or influence, the other party or other persons; (3) knowledge, actual or constructive, of the real facts; (4) lack of knowledge and the means of knowledge of the truth as to the facts in question; (5) reliance, in good faith, upon the conduct or statements of the party to be estopped; and (6) action or inaction based thereon of such a character as to change the position or status of the party claiming the estoppel. Becton, Dickinson & Co. v. Nebraska Dept. of Rev., 276 Neb. 640, 756 N.W.2d 280 (2008); Capitol City Telephone v. Nebraska Dept. of Rev., 264 Neb. 515, 650 N.W.2d 467 (2002).
The doctrine of equitable estoppel will not be invoked against a governmental entity except under compelling circumstances where right and justice so demand. Estate of McElwee v. Omaha Transit Auth., 266 Neb. 317, 664 N.W.2d 461 (2003). In such cases, the doctrine is to be applied with caution and only for the purpose of preventing manifest injustice. Id.
Viewing Lowe's evidence in the light most beneficial to Lowe and giving him the benefit of all reasonable inferences deducible from the evidence, as we are required to do, we note the evidence establishes Lowe's attorney contacted LPS on two separate occasions, once by telephone and once in person, and was told that the human resources department was the place to file his tort claim and that Wright was the person who "handles" the tort claims. "A claimant is entitled to rely on the representations and procedures of a political subdivision to identify the party to whom a claim should be addressed for filingprovided that the plaintiff is diligent in inquiring." Estate of McElwee v. Omaha Transit Auth., 266 Neb. at 328, 664 N.W.2d at 470 (Gerrard, J., concurring; McCormack and Miller-Lerman, JJ., join) (joining majority opinion finding that plaintiff did not meet filing requirements of Tort Claims Act; however, concurrence noted that plaintiff made no inquiries of political subdivision and that therefore there were no representations by political subdivision upon which plaintiff could show reliance). However, we note that there is no legal duty on the part of a political subdivision, or any other party, to inform an adversary of the existence of a statute of limitations or other nuance of the law. *416 Estate of McElwee v. Omaha Transit Auth., supra.
Other evidence, when also viewed in the light most favorable to Lowe, supports Lowe's claim of equitable estoppel. Wright's letter dated November 1, 2005, wherein she "acknowledges receipt by the Human Resources Department of your September 13, 2005 and October 26, 2005 letters on the above referenced claim," was clearly artfully crafted. Wright's letter, when viewed favorably to Lowe, can be seen as calculated to convey the impression that Lowe's attorney had properly filed the claim, which is inconsistent with the position LPS and Kaczmarczyk now assert. Moreover, when giving Lowe the benefit of all reasonable inferences deducible from the evidence, it can be said that this letter was drafted and, importantly, sentgiven that the law requires no acknowledgment of the filing of a claim with the expectation that the attorney would rely upon the letter as evidence that Lowe's tort claim had been properly filed. Consequently, the letter can be seen as lulling Lowe's attorney into a false sense of security regarding the purported filing and implies that the lawyer needed to neither make further inquiry nor take additional action with respect to the perfection of Lowe's claim.
In contrast to the impression conveyed by the letter, when viewed as outlined above, Wright had actual knowledge of the real facts and Wright knew at the time she mailed the aforementioned letter that the superintendent, rather than herself or Miller or the human resources department, was designated to accept tort claims on behalf of LPS. For purposes of the summary judgment motion, the evidence, when viewed favorably to Lowe, reveals that his attorney relied upon Wright's letter in his belief that Lowe's claim had been properly filed. Thus, the lawyer's failure to discover the proper person with whom to file the claim pursuant to the Tort Claims Act does not prevent the application of the doctrine of equitable estoppel.
Further, the fact that Lowe's letter was addressed to "Sir or Madam" in human resources, not to Wright, does not defeat his claim, because there is no statutory requirement that a claim filed pursuant to the Tort Claims Act need be addressed to a particular individual. Three Nebraska Supreme Court justices have indicated that addressing a claim in the statutory language of § 13-905 is sufficient:
If the identity of the appropriate party is unknown, mirroring the statutory language and addressing a claim to the "clerk, secretary, or other official whose duty it is to maintain the official records" of a political subdivision would, in my opinion, suffice to meet the statutory requirement. See § 13-905.
Estate of McElwee v. Omaha Transit Auth., 266 Neb. 317, 328, 664 N.W.2d 461, 470 (2003) (Gerrard, J., concurring; McCormack and Miller-Lerman, JJ., join). Therefore, by extension, if the notice is addressed to a person or entity that the defendants are equitably estopped from asserting is improper, the addressee used by Lowe's attorney is not determinative.
We find, after viewing the evidence most favorably to Lowe, that there are genuine issues of material fact as to whether LPS and Kaczmarczyk are equitably estopped from asserting the defense that notice was not properly given, which would bar Lowe's claim. In so holding, we recall the standard for equitable estoppel against a governmental entity: There must be compelling circumstances where right and justice so demand for the purpose of preventing manifest injustice. See Estate of McElwee v. Omaha Transit Auth., supra. Whether the circumstance here rises to *417 that standard is part and parcel of the material issues of fact set out in the record made on the motion for summary judgment.
Therefore, we find that the evidence presented by Lowe, when viewed most favorably to him, raises genuine issues of material fact as to whether equitable estoppel should be applied to preclude LPS and Kaczmarczyk from raising the affirmative defense that Lowe did not comply with the filing requirements of the Tort Claims Act.

Cross-Appeal.
LPS and Kaczmarczyk have cross-appealed, claiming that the district court erred in receiving portions of exhibit 14, the attorney's deposition, into evidence over hearsay and foundation objections. Specifically, LPS and Kaczmarczyk objected to the oral conversations that Lowe's attorney claimed he had with alleged employees of LPS, where, in response to the attorney's question about where to file a tort claim against the district, he was told to send it to the human resources department and was given the post office box address to send the claim to. Additional testimony objected to on the basis of foundation and hearsay was Lowe's attorney's testimony that he was told to follow up with, and talk to, Wright because she was the person who handles the tort claims.
In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by such rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Sturzenegger v. Father Flanagan's Boys' Home, 276 Neb. 327, 754 N.W.2d 406 (2008); Karel v. Nebraska Health Sys., 274 Neb. 175, 738 N.W.2d 831 (2007).
During the attorney's deposition, he testified that he made notes contemporaneously with his first telephone call to LPS when he requested the place to file a political subdivision tort claim, which notes were marked as deposition exhibit 7. The notes stated "Nancy" and "HR Lincoln Public Schools PO Box 82889 Lincoln 68501." Although the attorney could not recall whether "Nancy" was the person whom he talked to or a person who worked for human resources whom he was directed to contact, the attorney testified that he was directed to file his claim with the human resources department at the address which he had been provided and which he wrote down contemporaneously with the telephone call. Since the district court's consideration of deposition exhibit 7 was not raised as an issue on appeal and the attorney's testimony was necessary foundation for the admission of said deposition exhibit, the testimony was admissible. Further, as to the second telephone conversation, we find that, because other similar evidence was admitted during the deposition and was not objected to, the objected-to evidence was cumulative. Therefore, we find that the district court did not err in receiving portions of exhibit 14, the attorney's deposition testimony, into evidence over LPS and Kaczmarczyk's objections.

CONCLUSION
In sum, we find that the district court properly determined that Lowe failed to comply with the filing requirements of § 13-905 of the Tort Claims Act. However, we find that the evidence presented by Lowe, and the reasonable inferences deducible therefrom, has raised a genuine issue of material fact regarding whether the required elements of equitable estoppel should be applied to preclude LPS and Kaczmarczyk from raising the affirmative defense that Lowe did not comply with the filing requirements of the Tort Claims Act. *418 Further, we reject LPS and Kaczmarczyk's claim that the district court erred in receiving portions of exhibit 14 into evidence over objection and affirm the district court's consideration of exhibit 14 for the purposes of the summary judgment determination. Therefore, the decision of the district court granting summary judgment in favor of LPS and Kaczmarczyk and dismissing Lowe's petition is affirmed in part, and in part reversed, and this cause is remanded for further proceedings.
AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.