BRENDA L. KELLER, APPELLANT, V.
THOMAS N. TAVARONE, M.D., APPELLEE.
655 N.W.2d 899

Filed January 31, 2003. No. S-01-1052.

Richard A. DeWitt and Robert S. Lannin, of Croker, Huck, Kasher, DeWitt, Anderson & Gonderinger, P.C., for appellant.

Robert W. Wagoner for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

PER CURIAM.
## NATURE OF CASE
Appellant, Brenda L. Keller, filed a medical malpractice petition against appellee, Thomas N. Tavarone, M.D., under the Political Subdivisions Tort Claims Act (Tort Claims Act),

expressly relying on the "savings clause" of Neb. Rev. Stat. § 13-919(2) (Reissue 1997). The district court found the savings clause inapplicable and dismissed the action. We removed the appeal to our docket on our own motion pursuant to our authority to regulate the caseloads of this court and the Nebraska Court of Appeals. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995). As explained below, we affirm the September 4, 2001, order of the district court.

## BACKGROUND

Keller originally sued Tavarone for alleged medical malpractice utilizing the provisions under the Nebraska Hospital-Medical Liability Act (NHMLA). See, Neb. Rev. Stat. ch. 44, art. 28 (Reissue 1993 & Cum. Supp. 1996); *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). This prior action shall hereinafter be referred to as the "first suit."

In the first suit, Keller filed a petition in district court on December 31, 1998. The petition alleged Tavarone had performed an abdominal hysterectomy on Keller on May 27, 1997, at Cherry County Hospital and that complications had ensued, including a fistula and an obstructed ureter. The petition waived review of the claim by a medical review panel pursuant to the NHMLA. See Neb. Rev. Stat. § 44-2840(4) (Reissue 1998). The petition did not allege compliance with the Tort Claims Act. See Neb. Rev. Stat. § 13-920(1) (Reissue 1997).

The district court dismissed the first suit on January 12, 2000. The court determined that Tavarone was an employee of a county hospital which, as a governmental entity, is exclusively subject to the provisions of the Tort Claims Act. The court further found that Keller had not complied with the claim requirements of the Tort Claims Act. This court affirmed. *Keller v. Tavarone, supra.*

Shortly thereafter, Keller submitted a written claim to the political subdivision on January 27, 2000, pursuant to Neb. Rev. Stat. § 13-905 (Reissue 1997) of the Tort Claims Act. After waiting the required 6 months, Keller withdrew the tort claim and commenced this suit on August 14, 2000, pursuant to § 13-920(2). On November 27, 2000, Keller filed an amended petition. This second action will hereinafter be referred to as the "second suit."

Keller's cause of action in the second suit expressly relies on the "savings clause" of the Tort Claims Act. See § 13-919(2). In

district court, Keller argued that § 13-919(2) of the Tort Claims Act extended the filing period in which a claim must be made under § 13-920(1). Keller alleged that the savings clause extended the filing period for 6 months from the date the first suit was dismissed. She further alleged that the filing requirements were satisfied and that her claim was timely.

Tavarone filed a demurrer. Tavarone argued that Keller had not satisfied the condition precedent of § 13-920(1) requiring a claim to be submitted to the political subdivision within 1 year after such claim accrued. Therefore, Keller's cause of action was time barred.

Neither the district court nor this court considered the applicability of the savings clause in the first suit, finding the argument premature. However, in the second suit, the district court ruled (1) that the savings clause did not apply to political subdivision employee negligence cases filed under § 13-920 and (2) that even if § 13-919(2) applies to claims filed under § 13-920, its application would not save the second suit because the time to file Keller's claim had expired. The district court reasoned that the language "otherwise expire" found in the savings clause meant that the time to make a claim under the Tort Claims Act expires 1 year after such claim accrued, or in Keller's case, on May 27, 1998. Since the first suit was filed on December 31, 1998, the court concluded that Keller's petition in the second suit was time barred. For these two reasons, the district court dismissed Keller's cause of action in the second suit.

## ASSIGNMENTS OF ERROR

Keller assigns that the district court erred (1) in concluding that the savings clause found in § 13-919(2) does not apply to political subdivision employee negligence cases and (2) in the court's interpretation that even if the savings clause is applicable to political subdivision employees, its application is improper because the time to make a claim under the Tort Claims Act had already expired.

## STANDARD OF REVIEW

While a demurrer otherwise goes only to those defects in pleading which appear on the face of the petition and those documents attached to and made a part of it, in ruling on a demurrer,

a court may take judicial notice of its own record in an interwoven and interdependent action it previously adjudicated. *Tilt-Up Concrete v. Star City/Federal*, 261 Neb. 64, 621 N.W.2d 502 (2001).

■ Statutory interpretation presents a question of law, in connection with which an appellate court has an obligation to reach an independent, correct conclusion irrespective of the decision made by the court below. *Ways v. Shively*, 264 Neb. 250, 646 N.W.2d 621 (2002).

## ANALYSIS

■ The Tort Claims Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees. *Keller v. Tavarone*, 262 Neb. 2, 628 N.W.2d 222 (2001). While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Tort Claims Act. *Id.* Section 13-920(1) provides, in relevant part, that

[n]o suit shall be commenced against any employee of a political subdivision for money on account of damage to or loss of property or personal injury to or the death of any person caused by any negligent or wrongful act or omission of the employee while acting in the scope of his or her office or employment . . . unless a claim has been submitted in writing to the governing body of the political subdivision within one year after such claim accrued . . . .

Keller's claim for medical malpractice accrued on May 27, 1997, but Keller did not file a claim with the political subdivision until January 27, 2000. It is, therefore, undisputed that Keller did not comply with the 1-year filing deadline set forth by § 13-920(1). We stated in the first suit, *Keller v. Tavarone*, 262 Neb. at 15, 628 N.W.2d at 232, that

the procedure the statutes required Keller to follow was, first, to file a claim with the appropriate officer of the political subdivision, pursuant to § 13-905, within 1 year of the accrual of her claim. After the claim was disposed of or withdrawn, pursuant to § 13-906, Keller would have been permitted to either submit a proposed petition to a review panel, or waive such review, pursuant to § 44-2840(3) and

(4). If she had presented the petition to a review panel, she would have had an extra 90 days, after the issuance of the opinion of the review panel, to file suit under the Tort Claims Act. See § 13-919(4). If she had waived the panel review, the action under the Tort Claims Act would have been filed directly in the district court. See, § 44-2840(4); § 13-907.

The operation of the NHMLA, however, did not excuse Keller from compliance with the requirement under the Tort Claims Act that the claim be presented to the political subdivision prior to filing suit. As Keller concedes that no claim was filed with the political subdivision prior to filing suit, her petition was properly dismissed pursuant to § 13-920(1).

Keller argues that the claim which provides the basis for the instant case was timely filed with the political subdivision pursuant to § 13-919(2), which provides, in relevant part, that

[i]f a claim is made or filed under any other law of this state and a determination is made by a political subdivision or court that the act provides the exclusive remedy for the claim, the time to make a claim and to begin suit under the act shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by the political subdivision if the time to make the claim and to begin suit under the act would otherwise expire before the end of such period.

Keller argues that her first suit, pursuant to the NHMLA, was a claim "made . . . under any other law of this state" and that she had an additional 6 months from the dismissal of the first lawsuit to file a claim with the political subdivision. Even assuming that a medical malpractice lawsuit is a claim "made . . . under any other law of this state"—a matter we need not decide—the problem with Keller's argument is that such an expansive reading of § 13-919(2) would result in the functional abrogation of §§ 13-919(1) and 13-920(1).

If Keller's argument were correct, then any potential claimant who had allowed the 1-year filing deadline of the Tort Claims Act to pass could revive that claim by filing a lawsuit in district court. When that lawsuit was dismissed, the claimant could then

file a claim with a political subdivision. Clearly, Keller's broad reading of § 13-919(2) is inconsistent with the legislative purpose expressed by the 1-year filing deadlines of §§ 13-919(1) and 13-920(1).

The taxpaying public has an interest in seeing that prompt and thorough investigation of claims is made where a political subdivision is involved, and the taxpayers who provide the public treasury with funds have an interest in protecting that treasury from stale claims. See *Campbell v. City of Lincoln*, 195 Neb. 703, 240 N.W.2d 339 (1976). The primary purpose of notice provisions in connection with actions against political subdivisions is to afford municipal authorities prompt notice of the accident and injury in order that an investigation may be made while the occurrence is still fresh and the municipal authorities are in a position to intelligently consider the claim and to allow it if deemed just or, in the alternative, to adequately protect and defend the public interest. *Id.*

Keller's suggested interpretation of § 13-919(2) would frustrate the purpose of the notice provisions. However, a court must place on a statute a reasonable construction which best achieves the statute's purpose, rather than a construction which would defeat the statute's purpose. *A-1 Metro Movers v. Egr*, 264 Neb. 291, 647 N.W.2d 593 (2002). Keller's reading of § 13-919(2) would also open a loophole in the notice provisions of the Tort Claims Act that would effectively extend the filing deadline for a tort claim against a political subdivision until no timely claim could be brought under *any* other state law. This would, as a practical matter, render §§ 13-919(1) and 13-920(1) meaningless. However, effect must be given, if possible, to all the several parts of a statute, and no sentence, clause, or word should be rejected as meaningless or superfluous if it can be avoided. *Omaha Pub. Power Dist. v. Nebraska Dept. of Revenue*, 248 Neb. 518, 537 N.W.2d 312 (1995).

We recognize that Keller's interpretation of § 13-919(2) is not necessarily inconsistent with the statutory language. It is, however, inconsistent with the statutory purpose reflected in the notice provisions of §§ 13-919(1) and 13-920(1). An appellate court will place a sensible construction upon a statute to effectuate the object of the legislation, as opposed to a literal

meaning that would have the effect of defeating the legislative intent. *A-1 Metro Movers v. Egr, supra.* The evident purpose of the 6-month extension of the filing deadline set forth in § 13-919(2) is to provide claimants who filed timely claims, but filed those claims with the wrong tribunal or pursuant to the wrong statute, enough time to present their claims to the proper political subdivision. This requires, however, that those claimants still act promptly in order to satisfy the public purpose reflected in the notice requirements.

We conclude, therefore, that a claim "made or filed under any other law of this state," within the meaning of § 13-919(2), must still be filed within the 1-year time limit imposed by the appropriate notice provision of either § 13-919(1) or § 13-920(1). If a claimant files a claim within 1 year of the accrual of the claim, but files that claim with the wrong tribunal or pursuant to the wrong statute, then § 13-919(2) provides the claimant with an additional 6 months, from the determination that the Tort Claims Act provides the exclusive remedy, to file a claim with the appropriate political subdivision as provided in § 13-905.

In this case, it is not disputed that Keller's first lawsuit under the NHMLA was not filed within 1 year of the accrual of the claim. Therefore, Keller did not comply with the notice provision of § 13-920(1), and her subsequent claim to the political subdivision was untimely. Consequently, the district court correctly dismissed Keller's petition, and the judgment of the district court must be affirmed.

AFFIRMED.