773 N.W.2d 152 (2009)
17 Neb. App. 857
Annette I. MACE-MAIN, Appellant,
v.
CITY OF OMAHA, a Nebraska municipal corporation and political subdivision, and Metropolitan Utilities District of Omaha, a Nebraska political subdivision and municipal corporation, Appellees.
No. A-08-1026.
Court of Appeals of Nebraska.
September 1, 2009.
*155 Marvin O. Kieckhafer, of Smith Peterson Law Firm, L.L.P., Council Bluffs, IA, for appellant.
Alan M. Thelen, Deputy Omaha City Attorney, for appellee City of Omaha.
Susan E. Prazan, Omaha, for appellee Metropolitan Utilities District of Omaha.
INBODY, Chief Judge, and CARLSON and MOORE, Judges.
CARLSON, Judge.

INTRODUCTION
Annette I. Mace-Main brought a negligence action under the Nebraska Political Subdivisions Tort Claims Act, Neb.Rev. Stat. § 13-901 et seq. (Reissue 2007) (the Act) against the City of Omaha (City) and Metropolitan Utilities District of Omaha (MUD), seeking damages for injuries she suffered in a fall. The district court for Douglas County granted MUD's motion to dismiss and granted the City's motion for summary judgment. Mace-Main appeals *156 the granting of both motions. Based on the reasons that follow, we affirm.

BACKGROUND
On February 2, 2007, Mace-Main filed a complaint in the district court against the City and MUD pursuant to the Act. The complaint indicated that proper notice of Mace-Main's claim was provided to the City and MUD and that both denied her claim. The complaint alleged that on August 6, 2005, Mace-Main was walking on a public sidewalk owned by the City and maintained by the City "and/or" MUD, located along Harney Street, and stepped on a defective manhole cover which suddenly and without warning shifted and gave way as she stepped on it, causing her to fall as her foot and leg descended forcefully into the manhole, resulting in severe and painful injuries to Mace-Main. The complaint alleged that the direct and proximate cause of the fall and resulting injuries was the negligence of the City and MUD. The complaint stated that as a result of the fall, Mace-Main suffered severe and painful bodily injuries which included a broken toe, a dislocated shoulder, and injuries to her elbow, knee, neck, and arms, as well as other bumps, bruises, and abrasions.
On February 12, 2007, MUD filed a motion to dismiss, contending that Mace-Main's complaint failed to state a claim upon which relief could be granted because Mace-Main had failed to make a claim to MUD within the 1-year period mandated by § 13-919(1). On March 16, the trial court granted MUD's motion to dismiss.
The City filed an amended answer to Mace-Main's complaint on January 18, 2008. In its amended answer, the City admitted Mace-Main's compliance with the notice provisions of the Act and asserted numerous affirmative defenses. The City subsequently filed a motion for summary judgment, on the ground that it did not have any duty in regard to the manhole cover in question because the manhole cover and the underlying watermeter pit belonged to MUD and it was MUD's duty to repair and maintain the manhole cover. A hearing was held on March 12. The evidence presented at the hearing showed as follows:
There are many different types of manholes in the City belonging to many different entities, including the City and MUD. MUD is the sole and exclusive provider of water service to private properties in Omaha. The City does not provide any water and does not participate in the provision of water services in any respect. When the City receives a complaint regarding a condition in a sidewalk or a manhole, it sends an employee out to inspect the location of the complaint. If the complaint is related to MUD's water distribution, the City immediately notifies a MUD dispatcher of the condition. MUD then takes action to remedy the problem. The City takes no further action after notifying MUD.
On August 7, 2005, the day after Mace-Main's accident, James Brandt, a sewer maintenance foreman for the City, received a call to go inspect a complaint of a defective manhole cover at or near a specific address on Harney Street. Brandt went to the site and found that the manhole cover was a cover for a MUD watermeter pit. A watermeter pit is a small brick-lined vault in the ground containing a watermeter that registers the accumulating waterflow provided to the property. Watermeter pits are located along water service lines that serve adjacent properties and are mostly found in older parts of Omaha. MUD checks the watermeter readings on a regular basis to determine how much to bill the adjacent property owner for water provided. Watermeter *157 pits are covered with metal covers that resemble other manhole covers. If a watermeter pit requires repair, MUD typically informs the adjacent property owner that it needs to make the repair. If the property owner fails to make the repair, MUD performs the repair and bills the property owner for the costs. The City does not own, maintain, or repair watermeter pits serving private properties.
Brandt found that the ring surrounding the manhole cover at issue was loose and had broken away from its foundation. While at the site, Brandt reported the watermeter pit to an MUD dispatcher and ordered barricades to be placed at the location as a matter of public safety. He testified that whenever he goes to the location of a complaint and there is a problem that needs followup, he secures the location if it presents a danger to someone coming upon it, whether it is the City's problem to fix or not. In the instant case, Brandt placed cones on the manhole cover until the barricades arrived.
On August 8, 2005, MUD sent an employee out to investigate the manhole cover at issue and identify the work to be done. On August 24, an MUD utility worker explored the watermeter pit and determined that it was abandoned. He then removed the ring of the watermeter pit, capped the inactive water service, and filled the hole to grade so that the sidewalk could be repoured over the area where the manhole cover and watermeter pit had been. Pursuant to City ordinances and the usual practice between the City and MUD, the City poured the new concrete at the location and billed MUD for the cost of restoring the sidewalk.
Following the hearing, the trial court entered an order on July 17, 2008, granting the City's motion for summary judgment and dismissing Mace-Main's complaint with prejudice. The trial court found that there was no evidence that the City had the obligation or the duty of repairing, servicing, or maintaining watermeter pits or their manhole covers. It found that it was MUD's watermeter pit and manhole cover and, thus, that it was MUD's responsibility to maintain the manhole cover which caused Mace-Main's accident. It further found that although the sidewalk surrounding the manhole cover is the City's responsibility to maintain, the obligation does not extend to the manhole cover itself. It concluded that there is no compelling evidence that the sidewalk was the proximate cause of any injury Mace-Main suffered.
On July 24, 2008, Mace-Main filed a motion to alter or amend the court's July 17 order, granting the City's motion for summary judgment. On November 13, the trial court denied Mace-Main's motion.

ASSIGNMENTS OF ERROR
Mace-Main assigns that the trial court erred in granting MUD's motion to dismiss and erred in granting the City's motion for summary judgment.

STANDARD OF REVIEW
A district court's grant of a motion to dismiss for failure to state a claim under Neb. Ct. R. Pldg. § 6-1112(b)(6) is reviewed de novo, accepting all the allegations in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party. Tolbert v. Omaha Housing Authority, 16 Neb.App. 618, 747 N.W.2d 452 (2008). Whether a complaint states a cause of action is a question of law, to be reviewed on appeal de novo. Id. A motion seeking dismissal of a complaint for failure to state a cause of action should be granted only if it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him or her to relief. Id.
*158 Summary judgment is proper when the pleadings and evidence admitted at the hearing disclose no genuine issue regarding any material fact or the ultimate inferences that may be drawn from those facts and that the moving party is entitled to judgment as a matter of law. McNeel v. Union Pacific RR. Co., 276 Neb. 143, 753 N.W.2d 321 (2008).
In reviewing a summary judgment, an appellate court views the evidence in a light most favorable to the party against whom the judgment is granted and gives such party the benefit of all reasonable inferences deducible from the evidence. Id.

ANALYSIS

MUD's Motion to Dismiss.
Mace-Main first assigns that the trial court erred in granting MUD's motion to dismiss, finding that the complaint fails to state a claim upon which relief can be granted because Mace-Main failed to comply with § 13-919(1). The Act is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees. Keller v. Tavarone, 265 Neb. 236, 655 N.W.2d 899 (2003). While not a jurisdictional prerequisite, the filing or presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Act. Keller v. Tavarone, supra. Section 13-919(1) requires that notice of a claim be made to the political subdivision within 1 year after the claim accrued: "Every claim against a political subdivision permitted under the . . . Act shall be forever barred unless within one year after such claim accrued the claim is made in writing to the governing body."
Mace-Main's complaint states that she was injured during an incident that occurred on August 6, 2005. The complaint and its attached exhibits show that Mace-Main sent notice of her claim to the City on August 1, 2006. The City denied Mace-Main's claim in a letter dated August 30, 2006, advising her that the manhole cover involved in the fall and injury belonged to MUD and was not the property of the City. On December 29, Mace-Main sent MUD notice of her claim, more than 16 months after the incident occurred. MUD responded by a letter dated January 3, 2007, denying Mace-Main's claim on the basis that it had not been made in writing to MUD within 1 year after the claim accrued. It is clear from the face of the complaint and attached exhibits that Mace-Main did not give MUD notice of her claim within 1 year of the date she was injured.
However, Mace-Main argues that her claim did not accrue on the date her injury occurred. Rather, Mace-Main contends that pursuant to the discovery rule, her claim did not accrue until she discovered that MUD may be the entity responsible for her injuries. She alleges that this occurred on August 30, 2006, when the City denied her claim and implicated MUD. She contends that before receiving the letter from the City stating that the manhole cover belonged to MUD, she had no reason to believe that MUD was involved in the matter.
It has generally been stated that in a negligence action, a statute of limitations begins to run as soon as the cause of action accrues, and an action in tort accrues as soon as the act or omission occurs. See Shlien v. Board of Regents, 263 Neb. 465, 640 N.W.2d 643 (2002). It has been determined, however, that the discovery rule applies in certain categories of cases. The rationale behind the discovery rule is that in certain categories of cases, the injury is not obvious and the individual is wholly unaware that he or she *159 has suffered an injury or damage. Id. Thus, when the discovery rule is applicable, the statute of limitations does not begin to run until the potential plaintiff discovers, or with reasonable diligence should have discovered, the injury. Id. The discovery rule is applicable to the statute of limitations provisions in § 13-919(1). See Polinski v. Omaha Pub. Power Dist., 251 Neb. 14, 554 N.W.2d 636 (1996).
The discovery rule applies when an individual's injury is not obvious and the individual is wholly unaware that he or she has suffered an injury or damage. Such is not the case here. Mace-Main's accident occurred on August 6, 2005, and she was aware of her injuries at that time. The discovery rule does not operate to toll the statute of limitations until a potential plaintiff discovers the negligent party. Accordingly, because Mace-Main's injuries occurred on August 6, 2005, that is the date on which her claim accrued and the 1-year notice requirement set forth in § 13-919(1) started. Thus, the notice of claim sent to MUD on December 29, 2006, did not comply with § 13-919(1).
Mace-Main also argues that the trial court erred in granting MUD's motion to dismiss because the court failed to consider § 13-919(3), which Mace-Main alleges extends her time to give MUD notice of her claim. Subsection (3) of § 13-919 provides:
If a claim is made or a suit is begun under the [A]ct and a determination is made by the political subdivision or by the court that the claim or suit is not permitted under the [A]ct for any other reason than lapse of time, the time to make a claim or to begin a suit under any other applicable law of this state shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by the political subdivision if the time to make the claim or begin the suit under such other law would otherwise expire before the end of such period.
(Emphasis supplied.) Mace-Main contends that when the City alleged or determined that Mace-Main's claim is not permitted against it under the Act because the manhole cover was not the City's property, Mace-Main should have been afforded the benefit of the 6-month extension of time under § 13-919(3) to make a claim against MUD. She alleges that the 6-month extension would begin on August 30, 2006, the day the City denied her claim for a reason other than lapse of time, and that her notice to MUD was within that 6-month period.
We determine that § 13-919(3) is inapplicable to the instant case. The subsection extends the time to file claims brought "under any other applicable law of the state" against a political subdivision after it is determined that a claim is not permitted under the Act against that political subdivision. After the City denied Mace-Main's complaint under the Act, Mace-Main brought her claim against MUD, a different political subdivision, under the Act and not "under any other applicable law of this state." Section 13-919(3) does not extend the time for filing a claim under the Act against a different or additional political subdivision after one political subdivision denies the claim, as Mace-Main suggests.
Because Mace-Main failed to give MUD written notice of her claim within 1 year after her claim accrued as required by § 13-919(1), her complaint fails to state a claim upon which relief can be granted. The trial court did not err in granting MUD's motion to dismiss.

*160 City's Motion for Summary Judgment.

Mace-Main next assigns that the trial court erred in granting the City's motion for summary judgment, finding that there was no evidence that the City had any duty to maintain and repair the manhole cover at issue and that such duty belonged to MUD. The evidence is undisputed that the manhole cover that caused Mace-Main's accident was covering a watermeter pit and that a watermeter pit is part of the water distribution system in Omaha. The City does not participate in the water distribution system in any respect. Rather, it is MUD that is responsible for the water distribution system. Neb.Rev.Stat. § 14-2113 (Reissue 2007) grants MUD "general charge, supervision, and control of all matters pertaining to the natural gas supply and the water supply of the district for domestic, mechanical, public, and fire purposes." Accordingly, it is MUD's duty to maintain the watermeter pit and the manhole cover that caused Mace-Main's injuries. There was no evidence that the City had any duty to repair, service, or maintain any element of the water distribution system, including the watermeter pit and manhole cover at issue.
After Mace-Main's accident, the City referred the matter to MUD upon determining that the manhole cover belonged to MUD. MUD demonstrated its ownership and control over the watermeter pit and manhole cover by responding to the City's referral, determining that the watermeter pit was abandoned, filling in the hole, and paying to have the concrete poured over the area. The duty to maintain the watermeter pit and its manhole cover falls on MUD. Although the City took precautions to protect the public after it determined the manhole cover was defective and it contacted MUD, that in and of itself does not show that it was the City's duty to maintain the manhole cover.
Mace-Main argues that there are genuine issues of material fact as to whether the City is liable for her injuries based on the City's duty to keep its streets and sidewalks in a reasonably safe condition. Mace-Main contends that because the manhole cover was located on the sidewalk where she was walking, the City is liable for her injuries. The City may have a duty to maintain its sidewalks, but such duty does not extend to the manhole cover itself. This is apparent based on statutory law which authorizes MUD to place facilities within City streets, but also provides that liability arising out of operation of the water system lies solely with MUD, and not with the City. Specifically, § 14-2113 grants MUD the authority to enter upon and utilize streets, alleys, and public grounds. Neb.Rev.Stat. § 14-814 (Reissue 2007) states that the City is not to be liable "for any tort or act of negligence of the metropolitan utilities district . . . which may in any way result from, grow out of, or be connected with the maintenance, management, control, or operation of any water system."
Further, there is no evidence that the sidewalk contributed in any way to Mace-Main's fall and injuries. There is no evidence that a defective or dangerous condition existed in the sidewalk. Mace-Main's complaint and testimony only target the manhole cover as causing her fall, and not the sidewalk. Mace-Main's complaint alleges that she slipped and fell on what she characterized as a "defective manhole cover." Mace-Main testified that the accident happened when she stepped on the manhole cover and it moved, causing her to fall. She did not plead or testify that any problem with the sidewalk caused her injuries. Rather, it was the defective manhole cover on the watermeter pit that caused the fall, a manhole cover which the City has no duty to maintain.
*161 In summary, the evidence shows that the watermeter pit and its manhole cover at issue belonged to MUD; that it was MUD's duty to maintain, repair, and service them; and that the City had no duty or responsibility in regard to the watermeter pit and its manhole cover. Accordingly, the trial court did not err in granting summary judgment in favor of the City.

CONCLUSION
For the reasons stated above, we conclude that the trial court did not err in granting MUD's motion to dismiss and did not err in granting the City's motion for summary judgment. Accordingly, the judgments of the trial court granting MUD's motion to dismiss and granting the City's motion for summary judgment are affirmed.
AFFIRMED.