to attorney fees or the issues raised in the cross-appeals of Frederick and Falls City. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.[33]

## V. CONCLUSION

For the foregoing reasons, we vacate and reverse the writ of mandamus and the order awarding attorney fees to Frederick, and we remand the cause to the district court with directions to dismiss.

VACATED AND REVERSED, AND
REMANDED WITH DIRECTIONS.

---

[33] *Conroy v. Keith Cty. Bd. of Equal.*, 288 Neb. 196, 846 N.W.2d 634 (2014); *Holdsworth* v. *Greenwood Farmers Co-op*, 286 Neb. 49, 835 N.W.2d 30 (2013).

---

BRADLY BROTHERS, APPELLANT, V. KIMBALL COUNTY
HOSPITAL, DOING BUSINESS AS KIMBALL HEALTH
SERVICES, ET AL., APPELLEES.
___ N.W.2d ___

Filed January 16, 2015.    No. S-13-725.

1. **Motions to Dismiss: Appeal and Error.** A district court's grant of a motion to dismiss is reviewed de novo.
2. **Motions to Dismiss: Pleadings: Appeal and Error.** When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.
3. **Summary Judgment: Appeal and Error.** In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.
4. ____: ____. An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.
5. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

6. **Counties: Health Care Providers: Political Subdivisions.** A county hospital is not merely an agency of the county, but, rather, is a separate and independent political subdivision.

7. **Appeal and Error.** Error without prejudice provides no ground for relief on appeal.

8. **Motions to Dismiss: Rules of the Supreme Court: Summary Judgment: Pleadings.** When matters outside the pleading are presented by the parties and accepted by the trial court with respect to a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6), the motion shall be treated as a motion for summary judgment and the parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by statute.

9. **Courts: Appeal and Error.** Upon further review from a judgment of the Nebraska Court of Appeals, the Nebraska Supreme Court will not reverse a judgment which it deems to be correct simply because its reasoning differs from that employed by the Court of Appeals.

10. **Political Subdivisions Tort Claims Act: Jurisdiction.** The filing of presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Political Subdivisions Tort Claims Act.

11. **Political Subdivisions Tort Claims Act: Time.** Neb. Rev. Stat. § 13-919(3) (Reissue 2012) does not extend the time for filing a claim under the Political Subdivisions Tort Claims Act against a different or additional political subdivision after one political subdivision denies the claim.

12. **Political Subdivisions Tort Claims Act: Notice.** A notice of claim filed only with one unauthorized to receive a claim pursuant to Neb. Rev. Stat. § 13-905 (Reissue 2012) does not substantially comply with the notice requirements of the Political Subdivisions Tort Claims Act.

Petition for further review from the Court of Appeals, Moore, Pirtle, and Riedmann, Judges, on appeal thereto from the District Court for Kimball County, Derek C. Weimer, Judge. Judgment of Court of Appeals affirmed.

Sterling T. Huff, of Island & Huff, P.C., L.L.O., for appellant.

Mark A. Christensen, of Cline, Williams, Wright, Johnson & Oldfather, L.L.P., for appellees Kimball County Hospital and Trevor W. Bush, M.D.

Vincent Valentino and Brandy Johnson for appellee Kimball County.

Heavican, C.J., Connolly, Stephan, McCormack, Miller-Lerman, and Cassel, JJ.

CASSEL, J.

## INTRODUCTION

After receiving treatment at a county hospital, a patient filed a tort claim pursuant to the Political Subdivisions Tort Claims Act (Act) and later filed suit against the county, the hospital, and a physician. The district court dismissed the county and entered summary judgment in favor of the hospital and the physician. The Nebraska Court of Appeals affirmed.

We conclude that as a matter of law, a county hospital is a separate and distinct political subdivision from the county. Because the county could have no liability under the facts alleged, any error in failing to allow the patient to present evidence on the county's motion to dismiss was harmless. And because the patient did not file his tort claim with the statutorily designated individual, he failed to comply with notice requirements of the Act. We therefore affirm the decision of the Court of Appeals.

## BACKGROUND

### MEDICAL TREATMENT AND TORT CLAIM

On December 18, 2010, Bradly Brothers suffered injuries in a single-vehicle accident. As a result of his injuries, Brothers received medical treatment at Kimball County Hospital on December 18, 20, and 30. Brothers continued to suffer pain, and one of his fingers was visibly bent. A chiropractor subsequently took an x ray of Brothers' finger and discovered multiple fractures. On April 5, 2011, Brothers filed a tort claim pursuant to the Act with the Kimball County clerk, the chairperson of the Kimball Health Services Board of Trustees, and the chief executive officer (CEO) of Kimball Health Services.

### PLEADINGS IN LAWSUIT

On July 6, 2012, Brothers filed a complaint against Kimball County (County); the Kimball Health Services Board of Trustees; Kimball Health Services; Trevor W. Bush, M.D.; and another employee of the hospital. His complaint set forth causes of action for medical malpractice, for violation of his

right to privacy under certain statutes or "false light" violation of privacy, and for breach of contract.

The County filed a motion to dismiss, alleging that the complaint failed to state a claim upon which relief could be granted, that the County was not the employer of personnel at Kimball Health Services, and that the County was not involved in the health care services provided to Brothers. The County also filed a motion for protective order, asking that no discovery against it be allowed for the same reasons contained in the motion to dismiss.

Kimball County Hospital and Bush filed an answer to Brothers' complaint. The answer stated that Kimball County Hospital had been erroneously referred to as "Kimball Health Services" and that there was no legal entity named "'Kimball Health Services Board of Trustees.'" The answer admitted that Kimball County Hospital was a county hospital and a political subdivision and that Bush was an employee of Kimball County Hospital. Brothers thereafter moved to file an amended complaint to add Kimball County Hospital as a defendant.

Brothers later filed a second amended complaint against "Kimball County Hospital, d/b/a Kimball Health Services," and Bush. He alleged that Bush was an employee of Kimball County Hospital. In the responsive pleading of Kimball County Hospital and Bush, they asserted, among other things, that Brothers failed to comply with the notice requirements of the Act.

### District Court's Disposition

In the analysis section of this opinion, we provide more detail regarding the procedures followed in disposing of the County's motion to dismiss. The court's first order treated it as a motion for summary judgment and granted the motion. Upon Brothers' motion to alter or amend the judgment, the court "clarif[ied]" that it granted the County's motion to dismiss and overruled Brothers' "request" to submit additional evidence.

Kimball County Hospital and Bush subsequently moved for summary judgment. The evidence established that under the bylaws of Kimball County Hospital, the secretary "shall act as

custodian of all records and reports of the Board of Trustees"
and "shall be responsible for the keeping and reporting of
adequate records of all transactions and of the minutes of all
meetings of the Board of Trustees." Despite the bylaws' allo-
cation of responsibility, the CEO of Kimball County Hospital
testified in a deposition that he was the custodian of legal doc-
uments for the hospital, that he received Brothers' tort claim in
April 2011, and that he discussed the tort claim with members
of the board of trustees, including the secretary. The district
court found that Brothers did not file a copy of his tort claim
with the secretary of the board of trustees for Kimball County
Hospital and entered summary judgment in favor of Kimball
County Hospital and Bush.

### Court of Appeals' Decision

Upon Brothers' appeal, the Court of Appeals affirmed in
a memorandum opinion filed on July 1, 2014. The Court of
Appeals first determined that the district court did not err in
failing to allow Brothers to present evidence to oppose the
County's motion to dismiss and in granting the motion.

Regarding the summary judgment granted to Kimball County
Hospital and Bush, the Court of Appeals reasoned that Brothers
did not timely file his claim with the secretary of the board of
trustees—the person "designated by Kimball County Hospital
to receive tort claims"—and thereby failed to comply with the
filing requirements of the Act. Accordingly, the court rejected
Brothers' argument that by filing the tort claim with the person
who actually maintained the official records, he had complied
with the statute.

We granted Brothers' petition for further review.

### ASSIGNMENTS OF ERROR

Brothers assigns, consolidated and restated, that the Court of
Appeals erred by (1) finding that the County was properly dis-
missed and failing to reverse and remand for a summary judg-
ment hearing at which Brothers would have the opportunity
to present evidence and (2) determining that Kimball County
Hospital and Bush were properly dismissed based on lack of
service of the tort claim pursuant to the Act.

## STANDARD OF REVIEW

[1,2] A district court's grant of a motion to dismiss is reviewed de novo.[1] When reviewing an order dismissing a complaint, the appellate court accepts as true all facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the plaintiff's conclusion.[2]

[3] In reviewing a summary judgment, an appellate court views the evidence in the light most favorable to the party against whom the judgment was granted, and gives that party the benefit of all reasonable inferences deducible from the evidence.[3]

[4] An appellate court will affirm a lower court's grant of summary judgment if the pleadings and admitted evidence show that there is no genuine issue as to any material facts or as to the ultimate inferences that may be drawn from the facts and that the moving party is entitled to judgment as a matter of law.[4]

[5] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.[5]

## ANALYSIS

### WHETHER COUNTY HOSPITAL IS SEPARATE LEGAL ENTITY FROM COUNTY

Kimball County Hospital is a county-owned hospital created under Neb. Rev. Stat. §§ 23-3501 to 23-3527 (Reissue 2012 & Cum. Supp. 2014) (county hospital statutes). At oral argument, all parties agreed that the county hospital statutes control. But the parties interpret them differently. Brothers contends that the hospital is not a separate legal entity from the county. The other parties disagree.

---

[1] *Bruno v. Metropolitan Utilities Dist.*, 287 Neb. 551, 844 N.W.2d 50 (2014).

[2] *Id.*

[3] *Rice v. Bixler*, 289 Neb. 194, 854 N.W.2d 565 (2014).

[4] *SID No. 424 v. Tristar Mgmt.*, 288 Neb. 425, 850 N.W.2d 745 (2014).

[5] *Rodgers v. Nebraska State Fair*, 288 Neb. 92, 846 N.W.2d 195 (2014).

Brothers conceded at argument that resolution of this dispute is the "linchpin" to our decision. Thus, we must first decide whether a county hospital is a separate political subdivision from the county such that the county could have no liability for the acts of the hospital and its employees. The issue has not been squarely addressed in our case law, so we begin by examining our statutes.

A county hospital is not explicitly identified as a political subdivision, either in the Act or in the county hospital statutes. The Act's definition of "[p]olitical subdivision" itemizes "villages, cities of all classes, counties, school districts, learning communities, [and] public power districts."[6] Obviously, a county hospital is not included in this list. But the County correctly argues that the Act's definition also includes a catchall—"all other units of local government."[7] Thus, a county hospital could fall within the catchall. And where it was not disputed, we have accepted both a county and a county-owned hospital as political subdivisions subject to the Act.[8] Similarly, the county hospital statutes do not include express language classifying a county hospital as a body corporate and politic. In numerous instances, the Legislature has characterized a particular public entity as either a "body corporate and politic" or a "body politic and corporate."[9] But the absence of this language in the county hospital statutes does not settle the

---

[6] See Neb. Rev. Stat. § 13-903(1) (Reissue 2012).

[7] *Id*.

[8] See *Jessen v. Malhotra*, 266 Neb. 393, 665 N.W.2d 586 (2003).

[9] See, e.g., Neb. Rev. Stat. §§ 2-224(2)(g) (Reissue 2012) (elected county fair board); 3-611 (Reissue 2012) (board of airport authority); 13-1303 (Reissue 2012) (public building commission); 13-2519 (Reissue 2012) (joint public agency); 23-3533 (Reissue 2012) (hospital district); 23-3588 (Reissue 2012) (hospital authority); 31-369 (Reissue 2008) (drainage district); 31-505 (Reissue 2008) (sanitary district); 31-732 (Reissue 2008) (sanitary and improvement district); 39-868 (Reissue 2008) (bridge commission); 39-1606(3) (Reissue 2008) (road improvement district); 46-1005 (Reissue 2010) (rural water district); 70-608 (Reissue 2009) (public power and irrigation district); 70-805 (Reissue 2009) (rural power district); 70-1406(4) (Reissue 2009) (joint public power authority); and 71-1575(16) (Reissue 2009) (local housing agency).

question. To do so, we must examine the county hospital statutes in detail.

In order to predict the outcome of this examination, the district court reviewed two of our decisions. In one case, we concluded that a city airport authority was an independent political subdivision.[10] Because of the subsidiary's independent status, the parent municipal corporation was not liable for torts of the airport authority. In the other decision, we determined that a municipal utility was not a separate entity but only an agency or department of the city.[11] Thus, the utility's liability for a workers' compensation claim barred a separate tort action against the city. While these cases provide some assistance, our decision requires a close examination of the structure and content of the county hospital statutes.

Under the county hospital statutes, the county makes an initial decision whether to establish or acquire a hospital facility. The Legislature authorized a county board to issue and sell bonds for the construction of a hospital after the question of the issuance of the bonds had been submitted to the voters of the county.[12] The county board appoints a board of trustees for the hospital[13] and establishes the salary of the members of the board of trustees.[14] The county board may remove a member of the board of trustees for any reason and is responsible for filling the vacancy of any member.[15] In this sense, the county board's relationship with the hospital board of trustees resembles the relationship that existed at the time of the original enactment of the county hospital statutes between a general corporation's stockholders and its board of directors.[16]

---

[10] See *Lock v. City of Imperial*, 182 Neb. 526, 155 N.W.2d 924 (1968).

[11] See *Hofferber v. City of Hastings*, 275 Neb. 503, 747 N.W.2d 389 (2008).

[12] See § 23-3501.

[13] See § 23-3502(1).

[14] See § 23-3503.

[15] See § 23-3502(6).

[16] See, e.g., Neb. Rev. Stat. §§ 21-105 (stock requirements); 21-111 (general powers of board of directors); 21-113 (directors' term of office); 21-135 (stockholder election of directors); and 21-168 (displacement of directors) (Reissue 1943).

In effect, the hospital is the corporation, the county board comprises its "stockholders," and the hospital board of trustees operates as the hospital's "board of directors."

The county hospital statutes specify that a few major decisions require the county board's approval. If the board of trustees proposes to dispose of "all or substantially all of the facility or property," the county board must approve.[17] Similarly, county board approval is required to issue revenue bonds for which the revenue of the facility has been pledged.[18] And county board approval must be secured for an improvement or addition to the hospital that costs more than 50 percent of the hospital's replacement cost.[19] But these are the exceptions. Except for these major decisions, complete control is vested in the board of trustees. And this also parallels the statutory requirements of the general corporation law for stockholders' approval at the time of enactment of the county hospital statutes.[20]

Under the county hospital statutes, the board of trustees is responsible for the operation of the hospital. The board of trustees is charged with adopting rules for its own guidance and for governance of the hospital.[21] It has "the authority to pay all bills and claims due and owing by the facility."[22] The board of trustees also has "exclusive" control over "expenditures of all money collected to the credit of the fund for any such facility,"[23] "all improvements or additions to the facility and equipment,"[24] and "supervision, care, and custody of the grounds, rooms, buildings, and other property purchased,

---

[17] See § 23-3504(3).

[18] See § 23-3504(4).

[19] See § 23-3504(6).

[20] See, e.g., Neb. Rev. Stat. §§ 21-151 (amendment of articles of incorporation); 21-158 (reduction of capital); 21-183 (dissolution); 21-1,104 (merger); and 21-1,113 (disposition of all or substantially all property and assets) (Reissue 1943).

[21] See § 23-3505(2).

[22] § 23-3504(8).

[23] § 23-3504(5).

[24] § 23-3504(6).

constructed, leased, or set apart for the purposes set forth under [§] 23-3501."[25]

The board of trustees is also responsible for the staff of the hospital. The board of trustees shall adopt bylaws that govern the hospital's medical staff, approve the appointment of such staff, and supervise the quality of medical care and services provided at the hospital.[26] The board of trustees has the authority to pay the salaries of all hospital employees[27] and to establish and fund a retirement plan for the benefit of its full-time employees.[28] Thus, the hospital's board of trustees, not the county board, is responsible for the hospital's employees.

The county hospital statutes also contain provisions regarding fees for services. The governing board of each hospital is responsible for establishing rates and fees to be charged.[29] Any person to whom care and services have been rendered is liable for the costs and fees of such care and services to the appropriate county which maintains and operates the hospital.[30] But if suit is necessary to recover such costs and fees, it is to be brought in the name of the board of trustees of the facility.[31]

Section 23-3523 was recently amended, and Brothers attributes significance to its former language. At the time Brothers' claim arose, the statute required suit to recover costs and fees for services to be brought in the name of the *county* maintaining and operating the hospital.[32] Effective April 6, 2012[33] (shortly before the hearing on the County's

---

[25] § 23-3504(7).

[26] See § 23-3505(4).

[27] *Id.*

[28] § 23-3526(1).

[29] See § 23-3521.

[30] See § 23-3522.

[31] See § 23-3523.

[32] See § 23-3523 (Reissue 2007).

[33] See 2012 Neb. Laws, L.B. 995.

motion to dismiss), the statute was amended to require such a suit to be brought in the name of the hospital's board of trustees.[34]

But Brothers' reliance on the previous language of this section is misplaced. This action is not one brought on behalf of the hospital to recover costs and fees for care and services. And because of the nearly complete authority given to the board of trustees throughout the county hospital statutes, we do not attribute any special significance to the statute's former language.

[6] Considering the county hospital statutes as a whole, we conclude that a county hospital is a separate legal entity from the county. The hospital's governing body is responsible for formulating rules to guide itself. Further, it is the board of trustees—not the county—that has the authority to pay claims against the hospital. We conclude that a county hospital is not merely an agency of the county, but, rather, is a separate and independent political subdivision.

One caveat should be noted. The parties do not dispute that Kimball County has a population of fewer than 200,000 inhabitants and, thus, falls within the first subsection mandating that the county board appoint a separate board of trustees.[35] The second subsection governs counties having 200,000 or more inhabitants, and permits the county board, "in lieu of appointing a board of trustees," to "elect to serve as the board of trustees of [the hospital]."[36] Our conclusion is limited to the situation governed by the first subsection, and we express no opinion regarding the legal status of a county hospital where the county board may and does elect to serve as the board of trustees.

Because the county hospital is a separate legal entity and control of the hospital's employees is entrusted to that entity, it necessarily follows that the county has no liability for the acts of a county hospital's employees. With that understanding

---

[34] See § 23-3523 (Reissue 2012).

[35] See § 23-3502(1).

[36] See § 23-3502(2).

in place, we turn to the issues raised in Brothers' petition for further review.

## Procedure Concerning
### Motion to Dismiss

Brothers contends that a lack of procedural process by the district court concerning the County's motion to dismiss is the crux of this case, because he was never given an opportunity to present his evidence in opposition to the motion to dismiss once it was converted to a motion for summary judgment. Although we do not approve of the procedure undertaken by the district court, we find no reversible error.

During the August 2012 hearing, the district court first considered the County's motion to dismiss and the County offered evidence in support of its motion. Brothers objected to the receipt of the exhibits and requested a continuance in order to conduct discovery and prepare further affidavits. The court stated that it would treat the motion as one for summary judgment, and it set a further hearing for September 4. But before that date arrived, the parties filed a stipulation to continue the hearing until the court ruled on the motion for protective order, and the court adopted the stipulation.

Without holding a further hearing or receiving any evidence from Brothers, the district court later granted the County's motion to dismiss, which it continued to treat as a motion for summary judgment. The court also determined that the County's motion for protective order was moot.

After the district court granted the County's motion, Brothers filed a timely motion to alter or amend the order, pointing out that the court approved the stipulation of the parties to continue the hearing on the motion to dismiss until the court ruled on the motion for protective order. The motion asked the court to set aside its order and to permit him to obtain affidavits. In response to Brothers' motion, the court stated that "to clarify the record," it had granted the County's motion for protective order and motion to dismiss. In a footnote, the court overruled Brothers' request to submit additional evidence, stating that it ruled on the motion to dismiss by reviewing the

pleadings and the law and that the evidence submitted by the County was "largely irrelevant to the question of law raised in the [m]otion."

[7,8] Although the procedure used by the district court is not ideal, error without prejudice provides no ground for relief on appeal.[37] Brothers correctly points out that when matters outside the pleading are presented by the parties and accepted by the trial court with respect to a motion to dismiss under Neb. Ct. R. Pldg. § 6-1112(b)(6), the motion "shall be treated" as a motion for summary judgment and the parties shall be given a reasonable opportunity to present all material made pertinent to such a motion by statute.[38] But we have previously determined that where a court received evidence which converted a motion to dismiss into a motion for summary judgment, but did not give a party notice of the changed status of the motion, "there was no prejudice, because the motions presented an issue of law of which [the party] was notified in the motions to dismiss."[39] Because we have already determined that as a matter of law, a county hospital is a legal entity and political subdivision separate from the county itself, the County could have no liability under the facts alleged by Brothers. Accordingly, any error by the district court in failing to allow Brothers an opportunity to present evidence on the issue was harmless.

[9] Although our reasoning differs to some degree from that of the Court of Appeals, we reach the same result, i.e., the matter does not need to be reversed and remanded to allow Brothers an opportunity to present evidence. Upon further review from a judgment of the Court of Appeals, this court will not reverse a judgment which it deems to be correct simply because its reasoning differs from that employed by the Court of Appeals.[40]

---

[37] See *In re Interest of Tyler F.*, 276 Neb. 527, 755 N.W.2d 360 (2008).

[38] See *DMK Biodiesel v. McCoy*, 285 Neb. 974, 830 N.W.2d 490 (2013).

[39] *Corona de Camargo v. Schon*, 278 Neb. 1045, 1050, 776 N.W.2d 1, 7 (2009).

[40] *State v. Moore*, 276 Neb. 1, 751 N.W.2d 631 (2008).

FILING OF TORT CLAIM

Brothers also argues that the Court of Appeals erred in determining that Kimball County Hospital and Bush were properly dismissed due to Brothers' failure to meet the Act's filing requirements. Within 1 year of the accrual of Brothers' claim, he submitted a written claim to the Kimball County clerk, the chairperson of the Kimball Health Services Board of Trustees, and the CEO of Kimball Health Services. The Court of Appeals determined that because Brothers did not file the claim with the secretary of the Kimball County Hospital board of trustees, he did not satisfy the filing requirements. We agree.

[10] The filing of presentment of a claim to the appropriate political subdivision is a condition precedent to commencement of a suit under the Act.[41] Neb. Rev. Stat. § 13-905 (Reissue 2012) provides:

> All tort claims under the . . . Act . . . shall be filed with the clerk, secretary, or other official whose duty it is to maintain the official records of the political subdivision, or the governing body of a political subdivision may provide that such claims may be filed with the duly constituted law department of such subdivision.

Brothers makes three arguments that he sufficiently complied. We find no merit to any of these arguments.

First, Brothers maintains that he satisfied the Act because he filed his original claim with the county clerk. But because Kimball County Hospital is a distinct legal entity from the County and the County could have no liability under the facts alleged, service on the Kimball County clerk did not suffice to comply with § 13-905 as to Kimball County Hospital.

Second, Brothers asserts that his amended tort claim met the filing requirement. On August 30, 2012, Brothers filed an amended tort claim with a number of individuals, including the secretary of the Kimball County Hospital/Kimball Health Services Board of Trustees. According to the bylaws of Kimball County Hospital, the secretary was the person

---

[41] See *Jessen v. Malhotra, supra* note 8.

whose duty it was to maintain the official records of Kimball County Hospital. However, the amended tort claim was not filed within 1 year after Brothers' claim accrued, as the Act required.[42] Thus, the amended tort claim failed to timely comply with the Act.

Brothers attempts to avoid the time bar by relying on § 13-919. He claims that the statute "grant[s] relief to re-file when it comes to the attention of a party that there was an alleged service problem."[43] Brothers does not identify the subsection that he claims is applicable. We assume that he is relying on § 13-919(3), which provides:

> If a claim is made or a suit is begun under the act and a determination is made by the political subdivision or by the court that the claim or suit is not permitted under the act for any other reason than lapse of time, the time to make a claim or to begin a suit under any other applicable law of this state shall be extended for a period of six months from the date of the court order making such determination or the date of mailing of notice to the claimant of such determination by the political subdivision if the time to make the claim or begin the suit under such other law would otherwise expire before the end of such period.

[11] But § 13-919(3) does not save Brothers' amended tort claim. After Brothers commenced suit under the Act, the County responded that it was not the employer of personnel at Kimball Health Services and Kimball County Hospital asserted that it had been erroneously referred to as "Kimball Health Services" and that there was no legal entity named "'Kimball Health Services Board of Trustees.'" Thus, Brothers seems to argue that the political subdivision determined that "suit [was] not permitted under the act for any other reason than lapse of time."[44] But Brothers continued to assert a claim under the

---

[42] See Neb. Rev. Stat. § 13-919(1) (Reissue 2012).

[43] Memorandum brief for appellant in support of petition for further review at 9.

[44] See § 13-919(3).

Act and did not "make a claim or . . . begin a suit under any other applicable law of this state."[45] Section 13-919(3) does not extend the time for filing a claim under the Act against a different or additional political subdivision after one political subdivision denies the claim.[46] We conclude that Brothers' amended claim was time barred.

Finally, Brothers contends that he satisfied the filing requirement by filing the tort claim with the person who actually maintains the records of the political subdivision. Although the secretary of the board of trustees of Kimball County Hospital had the duty to maintain the records of the hospital under the bylaws, it was the CEO of Kimball County Hospital who actually maintained the records. And Brothers filed his initial tort claim with the CEO.

[12] But filing the tort claim with an official who does not have the duty to maintain the official records of the political subdivision does not satisfy the statute. As the Court of Appeals recognized, "The statute focuses on who has the duty to keep the records, not on who may actually do so." Although the CEO maintained the official records of Kimball County Hospital, under the bylaws, it was not his duty to do so. A notice of claim filed only with one unauthorized to receive a claim pursuant to § 13-905 does not substantially comply with the notice requirements of the Act.[47]

We addressed a similar situation in *Estate of McElwee v. Omaha Transit Auth.*[48] In that case, a tort claim regarding a personal injury was filed with the political subdivision's director of administration and human resources (administrator) and the evidence established that the administrator was responsible for overseeing claims for personal injury. The evidence showed that the administrator had acknowledged claims in

---

[45] See *id*.

[46] *Mace-Main v. City of Omaha*, 17 Neb. App. 857, 773 N.W.2d 152 (2009).

[47] *Willis v. City of Lincoln*, 232 Neb. 533, 441 N.W.2d 846 (1989). See, also, *Woodard v. City of Lincoln*, 256 Neb. 61, 588 N.W.2d 831 (1999); *Lowe v. Lancaster Cty. Sch. Dist. 0001*, 17 Neb. App. 419, 766 N.W.2d 408 (2009).

[48] *Estate of McElwee v. Omaha Transit Auth.*, 266 Neb. 317, 664 N.W.2d 461 (2003).

other cases and had at least once settled a claim rather than asserting lack of notice as a defense. However, the evidence did not contain any documentation conferring upon the administrator the duties set forth in § 13-905. Rather, the evidence showed that the executive director of the political subdivision's board of directors was responsible for keeping the official records. We stated:

> Nor has the plaintiff presented any evidence that [the administrator] was a de facto clerk, secretary, or official recordkeeper for [the political subdivision]. There is no evidence that [the administrator] was appointed to an office named in § 13-905, or was acting in such a capacity in a way calculated to induce people, without inquiry, to suppose her to be the occupant of one of those offices.[49]

Similarly, the evidence in the case before us does not establish that the CEO was a de facto clerk, secretary, or official recordkeeper. Nor does the evidence show that the CEO or Kimball County Hospital misrepresented to Brothers that the CEO was the person designated by statute to receive claims. Because the CEO did not have any of the duties set forth in § 13-905, the tort claim filed with him was not effective notice under the plain language of the Act.

We recognize that the result is harsh, particularly where the purpose of the written notice requirement has been satisfied. The evidence showed that the governing body—the board of trustees—was aware of and discussed Brothers' claim shortly after his treatment at Kimball County Hospital. However, Brothers' claim was not filed with the statutorily designated person. If the Legislature wishes to allow for substantial compliance in such a situation, it has the power to amend the statute. It is not our province to do so.

## CONCLUSION

We determine that a county hospital is a legal entity and political subdivision separate from the county itself and that, under the facts alleged in this case, the County could have

---

[49] *Id*. at 324, 664 N.W.2d at 467.

no liability as a matter of law. Thus, Brothers suffered no prejudice when he was not allowed an opportunity to present evidence regarding the County's motion to dismiss. We further conclude that Brothers failed to comply with the notice provisions of the Act, because he did not file his tort claim with the statutorily designated individual. We therefore affirm the decision of the Court of Appeals.

Affirmed.

Wright, J., not participating.

———————————

State of Nebraska, appellee, v.
Jonathon L. Armendariz, appellant.
___ N.W.2d ___

Filed January 16, 2015.    No. S-13-998.

1. **Postconviction: Constitutional Law: Appeal and Error.** In appeals from postconviction proceedings, an appellate court reviews de novo a determination that the defendant failed to allege sufficient facts to demonstrate a violation of his or her constitutional rights or that the record and files affirmatively show that the defendant is entitled to no relief.

2. **Postconviction: Constitutional Law: Proof.** An evidentiary hearing on a motion for postconviction relief must be granted when the motion contains factual allegations which, if proved, constitute an infringement of the movant's rights under the Nebraska or federal Constitution. However, if the motion alleges only conclusions of fact or law, or the records and files in the case affirmatively show that the movant is entitled to no relief, no evidentiary hearing is required.

3. **Postconviction: Pleas: Effectiveness of Counsel.** In a postconviction action brought by a defendant convicted because of a guilty plea or a plea of no contest, a court will consider an allegation that the plea was the result of ineffective assistance of counsel.

4. **Postconviction: Effectiveness of Counsel: Appeal and Error.** Although a motion for postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal, when a defendant was represented both at trial and on direct appeal by the same lawyer, the defendant's first opportunity to assert ineffective assistance of counsel is in a motion for postconviction relief.

5. **Postconviction: Effectiveness of Counsel: Proof: Appeal and Error.** In order to establish a right to postconviction relief based on a claim of ineffective assistance of counsel, the defendant has the burden, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), to show that counsel's performance was deficient; that is, counsel's performance did not equal that of a lawyer with ordinary training and skill in criminal law. Next, the